# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DENIS LAWLOR and DANIEL VARALLO, | ) ) ) | Case No. 17-cv-117 |
| Plaintiffs, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the motion to dismiss [32] filed by Defendants Major Luis Gutierrez, Lieutenant Cynthia Tencza, Karen Stec, and the Illinois State Police (collectively, the "State Defendants"), the motion to dismiss [35] filed by Defendants Metropolitan Water Reclamation District of Greater Chicago ("MWRD"), Kaye Heidenreich, David St. Pierre, and Denise Korcal (collectively, the "MWRD Defendants), and the motion to dismiss [38] filed by Defendant Motorola Solutions, Inc. ("Motorola"). For the reasons set forth below, Defendants' motions to dismiss [32; 35; 38] are granted. To the extent Plaintiffs' claims are not dismissed with prejudice, Plaintiffs are given until April 16, 2018 to file an amended complaint, if Plaintiffs believe they can cure the deficiencies identified below. The case is set for status on April 24, 2018 at 9:00 a.m.

# I.    Background[1]

This lawsuit stems from the alleged malfunction of a handheld radio manufactured by Motorola, which caused a conversation between Plaintiffs Denis Lawlor and Daniel Varallo to be inadvertently broadcast over a radio channel dedicated to the Illinois State Police. A recording of the conversation was copied and given to Plaintiffs' employer, resulting in their termination.

Plaintiffs Denis Lawlor and Daniel Varallo were police officers for the MWRD. [1, at ¶¶ 15-16.] At approximately 1:00 a.m. on January 18, 2015, Plaintiffs were engaged in what they characterize as a private conversation, which was intercepted by the Illinois State Police's Chicago North radio channel. *Id*. at ¶ 30. Only the Illinois State Police were authorized to access and broadcast on the Chicago North radio channel. *Id*. at ¶ 30. The conversation between Plaintiffs lasted approximately 58 minutes. *Id*. at ¶ 32.

Illinois State Police Telecommunication Specialist Angie Vandenberg, who was working as the dispatcher on the Chicago North radio channel, did not recognize the voices of the persons talking. *Id*. at ¶ 33. Vandenberg used an alert tone in an attempt to get Plaintiffs' attention and attempted to instruct Plaintiffs to stop talking, but the transmission of the conversation between Plaintiffs continued. *Id*. at ¶ 34. Vandenberg admitted that she recognized that Plaintiffs' conversation was personal in nature and did not involve official Illinois State Police business or a public safety matter. *Id*. at ¶ 36.

Acting Master Sgt. Rodney Collins, who was the midnight shift commander that night, listened to the entire conversation between Plaintiffs as the conversation was being transmitted over the Illinois State Police's Chicago North radio station. *Id*. at ¶ 38. Sgt. Collins realized that the conversation between Plaintiffs did not have anything to do with any official Illinois State

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Police business or public safety matter. *Id*. at ¶ 39. About 40 minutes into the private conversation between Plaintiffs, Sgt. Collins figured out that it was MWRD personnel who were inadvertently broadcasting over the Chicago North channel of the Illinois State Police. *Id*. at ¶ 30. Sgt. Collins then called Sgt. Patrick Kennedy at the MWRD, and the transmission ended shortly after. *Id*. at ¶ 30. Plaintiffs allege that the Illinois State Police recorded the entire private conversation between Plaintiffs, but Plaintiffs do not indicate whether the Illinois State Police always recorded the Chicago North radio channel. *Id*. at ¶ 37. Plaintiffs also fail to indicate who at the Illinois State Police recorded the conversation.

After the incident, Sgt. Collins sent an email to his supervisor Captain Luis Gutierrez (a State Defendant) to document the incident. *Id*. at ¶ 43. Defendant Gutierrez instructed Sgt. Collins to open an investigation after the incident to determine whether or not there was any criminal violation. *Id*. at ¶ 44. Defendant Gutierrez verbally requested Karen Stec (a State Defendant) to provide him with a copy of "the communication." *Id*. at ¶ 45. Defendant Stec had experienced several open mic situations in the past, but had never recorded any other open mic situation to a CD. *Id*. at ¶ 46. After listening to the conversation, Defendant Gutierrez realized that the conversation had nothing to do with an emergency situation. *Id*. at ¶ 51. Defendant Gutierrez then gave Illinois State Police Lieutenant Cindy Tencza (a State Defendant) a CD containing Plaintiffs' conversation and directed her to conduct an investigation. *Id*. Defendant Gutierrez noted, however, that any such investigation should be closed if the MWRD conducted an internal investigation. *Id*.

Defendant Gutierrez did not receive a formal written request or a subpoena from the MWRD for the CD containing the recording of the private conversation between Plaintiffs. *Id*. at ¶ 52. Rather, Defendant Tencza spoke with Kaye Heidenreich (an MWRD Defendant), the

Chief of Police for the MWRD, and Defendant Tencza volunteered to give Defendant Heidenreich the CD containing the recording of Plaintiffs' conversation, which she did on January 22, 2015. *Id*. at ¶ 53. After Defendant Heidenreich listened to the CD containing the recording of Plaintiffs' conversation, Denise Korcal (an MWRD Defendant), the Director of Human Resources for the MWRD, was summoned to Defendant Heidenreich's office to listen to a portion of Plaintiffs conversation. *Id*. at ¶¶ 58-59. Defendant Korcal called David St. Pierre (an MWRD Defendant), the Executive Director of the MWRD, and ordered that copies and a transcript of Plaintiffs' conversation be made. *Id*. at ¶¶ 59-61. The MWRD Defendants used the recording of Plaintiffs' conversation to terminate Plaintiffs' employment with the MWRD. *Id*. at ¶¶ 68-69.

Plaintiffs brought this lawsuit bringing claims under 42 U.S.C. § 1983, alleging that the State Defendants and the MWRD Defendants violated Plaintiffs' (1) First Amendment rights, (2) Fourth Amendment rights, (3) due process rights, and (4) equal protection rights. Plaintiffs also allege that the State Defendants and the MWRD Defendants violated the Electronic Communication Privacy Act. Finally, Plaintiffs bring a number of state-law claims against all Defendants, including Defendant Motorola. Before the Court are Defendants' motions to dismiss.

## II.    Legal Standard

The standard that the Court applies to a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir.2003) (*en banc*), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). If a defendant

challenges the sufficiency of the allegations regarding subject matter jurisdiction, the Court accepts all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See *Apex Digital,* 572 F.3d at 443–44; *United Phosphorus*, 322 F.3d at 946. In ruling on the motion, the district court also may look beyond the jurisdictional allegations alleged in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists. *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 958 (N.D. Ill. 2015). The burden of proof is on the party asserting that jurisdiction exists—here, Plaintiffs. *Id.*; see also *Gonzalez v. Bank of Am., N.A.*, 2014 WL 26283, at *2 (N.D. Ill. Jan. 2, 2014) ("the plaintiff bears the burden of establishing the basis for the court's jurisdiction").

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss

pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

## III.   Analysis

### A.   The Eleventh Amendment

 "The Eleventh Amendment provides states with immunity from suits in federal courts unless the State consents to the suit or Congress has abrogated their immunity." *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)). "State agencies are treated the same as states for purposes of the Eleventh Amendment." *Id.* (citing *Davidson v. Bd. of Govs.*, 920 F.2d 441, 442 (7th Cir. 1990)). "A suit against an official in her official capacity is equivalent to a suit against the agency she represents." *Offor v. Ill. Dep't of Human Servs.*, 2013 WL 170000, at *3 (N.D. Ill. Jan. 16, 2013). However, there is no Eleventh Amendment bar to federal claims for prospective injunctive relief against a state official in his or her official capacity. *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not

conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009); *Vasich v. City of Chicago,* 2013 WL 80372, at *8 (N.D. Ill. Jan.7, 2013).

The Illinois State Police are an arm of the state, *i.e.*, a state agency. *Tucker v. Williams*, 682 F.3d 654, 659 (7th Cir. 2012). Thus, any claims for money damages against the Illinois State Police are barred by the Eleventh Amendment, as are any such claims against officials of the Illinois State Police in their official capacities. Plaintiff Lawlor relies on *Gray v. Sanders*, 372 U.S. 368 (1963), to argue that the Eleventh Amendment does not insulate states "when state power is used as an instrument for circumventing a federally protected right." [51, at 2 (quoting *Gray*, 372 U.S. at 381).] However, the plaintiffs in *Gray* sought prospective relief only. Thus, *Gray* supports Plaintiff Lawlor's argument only to the extent that he seeks prospective relief.

Plaintiff Varallo implicitly recognizes that Plaintiffs' claims for monetary damages against the Illinois State Police and its officials in their official capacities are barred by the Eleventh Amendment, instead arguing that his claims against the Illinois State Police and its officials in their official capacities are not barred by the Eleventh Amendment because Plaintiffs are seeking prospective injunctive relief ordering Defendants to refrain from further constitutional violations.

However, Plaintiffs lack standing to seek injunctive relief ordering the State Defendants to refrain from further constitutional violations. "To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Unlike with

damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief: 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief * * * if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *Lyons*, 461 U.S. at 95-96).

Plaintiffs' employment with the MWRD was terminated. [1, at ¶¶ 68-69.] Plaintiffs have not alleged other facts indicating that they face a real or immediate threat of future injury resulting from any alleged misconduct on the part of the State Defendants. Thus, Plaintiffs lack standing to seek injunctive relief against the State Defendants.[2] *McKinney v. Illinois*, 720 F. Supp. 706, 709 (N.D. Ill. 1989) (dismissing claim for injunctive relief against plaintiff's former supervisor because plaintiff was no longer employed and therefore the alleged harassment was unlikely to recur); *Berry v. Illinois Dep't of Human Servs.,* 2001 WL 111035, at *8 (N.D. Ill. Feb.2, 2001) ("[T]hose plaintiffs that are no longer employed by [defendant] would not have standing to seek an injunction modifying [defendant's] future conduct."); see also *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."). Accordingly, Plaintiffs' claims against the Illinois State Police and Plaintiffs' claims against officials of the Illinois State Police (Defendants Major Luis Gutierrez, Lieutenant Cynthia Tencza, and Karen Stec) in their official capacities are dismissed with prejudice.

---

[2] The Court notes that the Eleventh Amendment bars state-law claims against state officials in their official capacity, regardless of the relief sought, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), unless the State has waived its Eleventh Amendment immunity. *MCI Telecommunications Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000). Plaintiffs have not argued that the State waived its Eleventh Amendment immunity. Thus, even if Plaintiffs had standing to seek injunctive relief, the Eleventh Amendment would still bar Plaintiffs' state-law claims against the State Defendants.

### B.    Municipal Liability

In order to find a municipality liable under § 1983, Plaintiffs must prove that a municipal policy or custom caused their injury. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986). This is because "[m]unicipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional tort of their agents." *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) (quoting *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006), as amended on denial of reh'g (May 25, 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). The MWRD is a municipality for the purposes of § 1983. *Hewitt v. Metro. Water Reclamation Dist. of Greater Chicago*, 2002 WL 31176252, at *3 (N.D. Ill. Sept. 30, 2002).

Courts have identified three ways in which a municipality can be liable to a plaintiff for a civil rights violation resulting from government policy:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (internal quotations and citations omitted). Plaintiffs do not allege any policy or practice of the MWRD that led to Plaintiffs' alleged civil rights violation. Accordingly, Plaintiffs' claims against the MWRD and Plaintiffs' claims against officials of the MWRD (Kaye Heidenreich, David St. Pierre, and Denise Korcal) in their official capacities are dismissed without prejudice.

## C. Constitutional Claims

### i. First Amendment

Count I alleges that the State Defendants and the MWRD Defendants violated Plaintiffs' First Amendment right to free speech. The complaint alleges that the State Defendants' decision "to record the Plaintiffs' private conversation without their knowledge and permission" and "to disseminate the recording of Plaintiffs' private conversation without their knowledge and permission violated" their First Amendment rights to free speech. [1, at ¶¶ 82-83.] Based on the limited allegations in the complaint, the basis of Plaintiffs' First Amendment claim is not entirely clear.

The MWRD Defendants understood Plaintiffs to be raising a First Amendment retaliation claim and moved to dismiss the retaliation claim, arguing that Plaintiffs fail to allege facts establishing necessary elements of a First Amendment retaliation claim. The State Defendants understood Plaintiffs to be raising a First Amendment claim based on a purported First Amendment right not to have their conversation recorded and/or disseminated and also moved to dismiss the claim, arguing that there is no clearly established First Amendment protection against the recording and/or dissemination of a private conversation. In response to the MWRD Defendants' motion to dismiss, Plaintiff Lawlor conceded that the complaint fails to state a First Amendment claim against the MWRD Defendants. [51, at 26.] Although Plaintiff Varallo does not make a similar concession,[3] Plaintiffs' First Amendment claim against the State Defendants and the MWRD Defendants fails under both interpretations.

---

[3] The docket entry for the response filed by attorney Alexander Michael [51] indicates that the response was filed on behalf of Plaintiff Lawlor. However, the response sometimes refers to plural "Plaintiffs"—indicating that the response was filed on behalf of both Plaintiffs. [51.] For example, the response states that "*Plaintiffs* concede that while although [sic] Count I is properly plead against other defendants, it does not apply to MWRD Defendants." [51, at 26 (emphasis added).] Because Plaintiff Varallo filed a separate response—through his attorneys Daniel Austin and Dennis Berkson—that specifically adopts only portions of the response filed by Mr. Alexander, the Court assumes that the brief filed by Mr. Michael raises arguments only on behalf of Plaintiff Lawlor. Given that

In order to bring a First Amendment retaliation claim in the employment context, Plaintiffs must show that (1) their speech was a matter of public concern, and (2) their speech played at least a substantial part in the employer's decision to take adverse action against them. *Gustafson v. Jones*, 290 F.3d 895, 906 (7th Cir. 2002). "If the plaintiffs can carry their burden on these two elements, the defendants can only prevail if they prove by a preponderance of the evidence that the government's interest, as an employer, in efficiently providing government services outweighs the employees' First Amendment interests, or if they can prove that they would have disciplined the employees even in the absence of the speech." *Id.* (citing *Klunk v. County of St. Joseph*, 170 F.3d 772, 775 (7th Cir. 1999)). "The stronger the employee's interest in speaking, the more substantial a showing the state must make to justify its restriction of that speech." *Gustafson*, 290 F.3d at 909 (citing *Waters v. Churchill*, 511 U.S. 661, 675 (1994)). In *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563, the Supreme Court set forth the factors to consider in this balancing test. Specifically, "*Pickering* contemplates a highly fact-specific inquiry into a number of interrelated factors: (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public." *Gustafson*, 290 F.3d at 909 (citing *Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000)).

---

Mr. Michael has filed an appearance on behalf of both Plaintiffs [43], the Court asks that Mr. Michael clearly indicate in future filings whether he is acting on behalf of both Plaintiffs or on behalf of a single Plaintiff.

Plaintiffs here fail to allege facts establishing that their speech was a matter of public concern. Plaintiffs do not include any allegations about the substance of their conversation, other than to assert that it was "a private conversation." [See, e.g. 1, at ¶31.] Plaintiff Varallo argues that "there is no basis to assert that the free speech of Plaintiffs did not involve a matter of public concern." [55, at 5.] Plaintiff Varallo further argues that dismissal is inappropriate, as *Pickering* requires a fact-specific analysis. *Id.* However, the application of the *Pickering* balancing analysis only is necessary once Plaintiffs have met their initial burden of establishing that (1) their speech was a matter of public concern, and (2) their speech played at least a substantial part in the employer's decision to take adverse action against them. Thus, Plaintiffs must allege facts sufficient to establish that their conversation was a matter of public concern. *Milsap v. City of Chicago*, 2018 WL 488270, at *4 (N.D. Ill. Jan. 19, 2018) (dismissing First Amendment retaliation claim because plaintiff did not allege that his speech was a matter of public concern). Plaintiffs fail to do so here.

To the extent Plaintiffs seek to bring a First Amendment claim based on a purported First Amendment right not to have their conversation recorded and/or disseminated, Plaintiffs also fail to state a claim. With respect to the MWRD Defendants, Plaintiffs do not allege that they recorded or disseminated their private conversation. Furthermore, there is no stand-alone First Amendment right not to have a conversation recorded and/or disseminated. Plaintiffs do not cite to—and the Court is not aware of—any cases establishing such a stand-alone right.

Even if there were a right not to have conversations recorded and/or disseminated, the State Defendants would be entitled to qualified immunity on any First Amendment claim based on such a right. "The qualified immunity defense is designed to protect government agents 'from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known.'"  *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine the availability of qualified immunity in a particular case, the Court engages in a two-step inquiry.  "The initial, threshold question is whether the facts, taken in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right."  *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If a constitutional right is violated, then the Court "must determine if that right was clearly established at the time of the alleged violation."  *Id*. (citing *Finsel v. Cruppenink*, 326 F.3d 903, 906 (7th Cir. 2003)).  This inquiry is flexible, however, and the Court may decide that conduct did not violate a clearly established constitutional right without deciding if a constitutional right was violated at all.  *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).  Furthermore, "the clearly established law must be 'particularized' to the facts of the case."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As discussed above, the parties have not cited—and the Court is not aware of—any cases recognizing that it is a violation of the First Amendment to record and/or disseminate a recording of a conversation, much less any cases clearly establishing a First Amendment violation under the particular facts of this case.  Thus, the State Defendants and the MWRD Defendants are entitled to qualified immunity with respect to this theory.

In sum, Count I is dismissed.  To the extent Plaintiffs' First Amendment claim is based on the purported First Amendment right not to have their conversation recorded and/or disseminated, Plaintiffs' First Amendment claim is dismissed with prejudice, as it would be futile to allow Plaintiffs to bring a First Amendment claim based on this legal theory.  To the extent Plaintiffs bring a First Amendment retaliation claim, Plaintiffs' First Amendment claim is

dismissed with leave to replead any such claim that is not barred by the Eleventh Amendment, as discussed above.

      *ii.     Fourth Amendment*

Count II alleges that the State Defendants and the MWRD Defendants violated Plaintiffs' Fourth Amendment rights. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." To state a § 1983 claim for a Fourth Amendment violation, Plaintiffs must plausibly allege that: (1) there was a search or seizure; and (2) the search or seizure was unreasonable. *Angara v. City of Chicago*, 897 F. Supp. 355, 358 (N.D. Ill. 1995). "A Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as unreasonable." (alteration and quotation marks omitted). *United States v. Scott*, 731 F.3d 659, 663 (7th Cir. 2013). A "seizure" for the purposes of the "Fourth Amendment occurs when a person's freedom of movement is restrained either by means of physical force or show of authority," *Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014) (quotation marks omitted), or "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

Defendants argue that Plaintiffs fail to allege facts establishing that they had a reasonable expectation in privacy. "A reasonable expectation of privacy exists when '(1) the complainant exhibits an actual (subjective) expectation of privacy and, (2) the expectation is one that society is prepared to recognize as 'reasonable.'" *United States v. Ruth*, 65 F.3d 599, 604 (7th Cir.1995) (quoting *United States v. Myers*, 46 F.3d 668, 669 (7th Cir. 1995)). The Supreme Court has recognized that "some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 717-18 (1987). If

the area that was searched was given over to an employee's exclusive use, courts are likely to uphold that employee's expectation of privacy as objectively reasonable. *Plock v. Bd. of Educ. of Freeport Sch. Dist. No. 145*, 545 F. Supp. 2d 755, 757 (N.D. Ill. 2007). A person objecting to the search of a particular area bears the burden of establishing "'a legitimate expectation of privacy' in the area searched." *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980) (quoting *Katz v. United States*, 389 U.S. 347 (1967)); see also *Love v. City of Chicago*, 1998 WL 60804, at *9 (N.D. Ill. Feb. 6, 1998).

Plaintiffs allege that they were on duty at the MWRD's Stickney plant when they had the conversation that was allegedly intercepted by the Illinois State Police. [1, at ¶¶ 29-30.] But they do not allege any facts indicating that they were in a private area of the plant. Plaintiff bears the burden of establishing that they had a legitimate expectation of privacy. *Gonzalez-Koeneke v. Rockford Dist. 205*, 2014 WL 11370445, at *2 (N.D. Ill. June 16, 2014) (dismissing Fourth Amendment claim where the plaintiff failed to allege facts showing that she had a reasonable expectation of privacy that society recognizes as reasonable). Plaintiffs fail to do so here.

Defendants also argue that Plaintiffs' Fourth Amendment claim fails because Plaintiffs fail to allege facts sufficient to establish any intentional search or seizure. In order to state a § 1983 claim against Defendants for violating Plaintiffs' Fourth Amendment rights, Plaintiffs must allege intentional conduct on the part of Defendants. *Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2003). Defendants further argue that if they did not intentionally intercept Plaintiffs' conversation, their subsequent recording and dissemination of that conversation did not "transform their actions into a search." [33, at 16 (quoting *United States v. Thompson*, 811 F.3d 944, 949-50 (7th Cir. 2016)).]

Plaintiffs concede that "there is nothing that the [State Defendants] could have done about initially overhearing [Plaintiffs' conversation] because it came upon them through no action of their own," but Plaintiffs argue that the State Defendants "did not need to record, transcribe, and disseminate the tape." [51, at 7; 55, at 7 (incorporating Varallo's response).] In other words, Plaintiffs admit that the State Defendants did not violate the Fourth Amendment by listening to Plaintiffs' conversation, but argue that the State Defendants did violate the Fourth Amendment by recording, transcribing, and disseminating the tape of the conversation.

In making this argument, Plaintiffs rely on *Walter v. United States*, which held that the government violated the defendants' Fourth Amendment right to privacy by viewing pornographic films turned over by a third-party without obtaining a search warrant. 447 U.S. 649, 656 (1979). In *Walter*, sealed packages containing films depicting sexual activities were incorrectly shipped to a private company by a private carrier. *Id*. at 651. Employees of the private company opened the package and discovered films with suggestive drawings on one side and explicit descriptions of the contents of each film on the other side. *Id*. at 652. One of the employees tried to view portions of a film by holding it up to the light, but the images were too small to be examined by the naked eye. *Id*. The employees then called the FBI, who picked up the packages. *Id*. The FBI viewed the contents of the tape without obtaining a warrant. *Id*. After the tapes were used to convict the defendants of federal obscenity charges, the defendants challenged the government's use of the films. *Id*. Even though a plurality of the Supreme Court recognized that a wrongful search or seizure conducted by a private party does not rise to a constitutional violation of the Fourth Amendment, it concluded that the FBI violated the Fourth Amendment by expanding the scope of the search conducted by the employees of a private company. The plurality explained:

> If a properly authorized official search is limited by the particular terms of its authorization, at least the same kind of strict limitation must be applied to any official use of a private party's invasion of another person's privacy. Even though some circumstances—for example, if the results of the private search are in plain view when materials are turned over to the Government—may justify the Government's re-examination of the materials, surely the Government may not exceed the scope of the private search unless it has the right to make an independent search. In these cases, the private party had not actually viewed the films. Prior to the Government screening one could only draw inferences about what was on the films. The projection of the films was a significant expansion of the search that had been conducted previously by a private party and therefore must be characterized as a separate search.

*Id.* at 657 (internal citations omitted). In *Walter*, the government did not know what they would find on the films. Even though the government could speculate about what was on the films, neither the government nor the third party that opened the package could testify as to the content of the films. Here, Plaintiffs' conversation was presented to certain State Defendants. The State Defendants who were lawfully listening to Plaintiffs' conversation could testify as to the contents of the conversation. Plaintiffs do not allege that Defendants conducted any search beyond a re-examination of the materials presented to them.

Plaintiffs point to language in Justice White's concurring opinion, indicating that even if the third party had viewed the films, the government still would have needed a warrant for any subsequent viewings of the film. [51, at 6-7.] However, later Supreme Court decisions have rejected this position.

In *United States v. Jacobsen*, the employees of a private freight carrier observed a white powdery substance, which was originally concealed within eight layers of wrappings, during their examination of a damaged package. 466 U.S. 109, 111 (1984). "They summoned a federal agent, who removed a trace of the powder, subjected it to a chemical test and determined that it was cocaine." *Id.* After being convicted of possession of an illegal substance with intent to distribute, the defendants challenged their conviction on the ground that the agent's examination

of the box violated the Fourth Amendment. *Id*. It was not clear whether the powder was visible to the agent when he arrived on the scene, but the Court concluded that "[e]ven if the white powder was not itself in 'plain view' because it was still enclosed in so many containers and covered with papers, there was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell him anything more than he already had been told." *Id*. at 119. The Court reasoned:

> Respondents do not dispute that the Government could utilize the Federal Express employees' testimony concerning the contents of the package. If that is the case, it hardly infringed respondents' privacy for the agents to reexamine the contents of the open package by brushing aside a crumpled newspaper and picking up the tube. The advantage the Government gained thereby was merely avoiding the risk of a flaw in the employees' recollection, rather than in further infringing respondents' privacy. Protecting the risk of misdescription hardly enhances any legitimate privacy interest, and is not protected by the Fourth Amendment. Respondents could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents. The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment. Similarly, the removal of the plastic bags from the tube and the agent's visual inspection of their contents enabled the agent to learn nothing that had not previously been learned during the private search. It infringed no legitimate expectation of privacy and hence was not a "search" within the meaning of the Fourth Amendment.

*Id*. (internal citations omitted). As long as the government does "not exceed the scope of the private search, [the government] may view or replicate the results of that search without violating the Fourth Amendment." *United States v. Shelton*, 418 F. App'x 514, 517 (7th Cir. 2011) (citing *United States v. Jacobsen*, 466 U.S. 109, 113-16 (1984)); *United States v. Hall*, 142 F.3d 988, 993 (7th Cir.1998); *Walter*, 447 U.S. at 656. Thus, although Plaintiffs rely on *Walter* to argue that additional layers of government actors needed a warrant to record, transcribe, and disseminate their conversation, *Walter* does not establish that the State Defendants' conduct violated the Fourth Amendment.

Furthermore, a long line of cases hold that the recording or transmitting of a conversation legally overheard does not violate the Fourth Amendment. See, *e.g., United States. v. White*, 401 U.S. 745, 751 (1971) ("If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks."); *United States v. Thompson*, 811 F.3d 944, 949 (7th Cir. 2016) ("[W]hen the informant discovers information from where he is lawfully entitled to be, the use of a recording device to accurately capture the events does not vitiate the consent or otherwise constitute an unlawful search."); *United States v. Miller*, 720 F.2d 227, 228 (1st Cir. 1983) ("Nor, equally, when one is lawfully listening to a conversation, is there a violation merely because, unknown to the other party, he records it." (citing *Lopez v. United States*, 373 U.S. 427, 439 (1963)); *cf. Matter of John Doe Trader No. One*, 722 F. Supp. 419, 422 (N.D. Ill. 1989) ("Where a tape recorder is used to record a conversation which the government agent is unable to overhear with his naked ear, a different situation is presented. There, the tape recorder can be the means of 'acquiring' the conversation, not simply the means of preserving it." (quoting *Katz v. United States*, 389 U.S. 347 (1967)).

Plaintiffs argue that these cases are distinguishable because the plaintiffs in those cases consented to speak with the person recording or transmitting the conversation. [51, at 5; 55, at 7 (incorporating Varallo's response).] Although it is true that these cases involved consensual conversations with a governmental agent or informant, these cases also recognize "the long-standing constitutional principle that a person does not have a constitutional right 'to rely on possible flaws in [an] agent's memory[.]'" *Thompson*, 811 F.3d 944, 950 (quoting *Lopez v.*

*United States*, 373 U.S. 427, 439 (1963)). Furthermore, "[i]t is settled that 'once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost.'" *United States v. Williams*, 737 F.2d 594, 606 (7th Cir. 1984) (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 (1983)). Given that Plaintiffs concede that the State Defendants lawfully listened to their conversation, Plaintiffs fail to allege that the State Defendants violated the Fourth Amendment by recording their conversation.

Since it did not violate the Fourth Amendment to record the conversation, it also did not violate the Fourth Amendment to transcribe or disseminate the recording. *Jabara v. Webster*, 691 F.2d 272, 279 (6th Cir. 1982) ("We do not believe that an expectation that information lawfully in the possession of a government agency will not be disseminated, without a warrant, to another government agency is an expectation that society is prepared to recognize as reasonable."); *United States v. Joseph*, 829 F.2d 724, 728 (9th Cir. 1987) ("Federal examination of evidence in the state's possession does not constitute an independent search requiring the execution of a search warrant."). Nor did it violate the Fourth Amendment for the MWRD Defendants to use a tape that it lawfully acquired.

In sum, because Plaintiffs cannot establish that the State Defendants or the MWRD Defendants violated their Fourth Amendment rights by recording a conversation that the State Defendants lawfully overhead, Plaintiffs Fourth Amendment claim is dismissed with prejudice.

### iii.    Due Process

Count III alleges that the State Defendants and the MWRD Defendants violated Plaintiffs' due process rights. The complaint does not indicate whether Plaintiffs are purporting to bring a procedural due process or a substantive due process claim against Defendants. Regardless, Plaintiffs fail to state a claim under either theory.

Procedural due process imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Fourteenth Amendment's Due Process Clause. See *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To state a claim for a violation of procedural due process, Plaintiff must allege (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014) (quoting *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010)); see also *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) (plaintiff must allege "a deprivation of a protected interest" and "insufficient procedural protections surrounding the deprivation").

Defendant Varallo argues that he had a property interest in his employment with the MWRD. [55, at 7.] Although Varallo was an employee of the MWRD, he was still a probationary officer on January 18, 2015. [1, at ¶16.] "To have a property interest [in public employment] a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The existence and dimension of a property interest is determined by looking to state law. *Id*. Pursuant to the MWRD Act, the Executive Director of the MWRD may terminate a probationary appointee "at any time during the period of probation" and any such termination "shall be final and not subject to review." 70 ILCS 2605/4.11. "[A]s a general rule, probationary police officers do not have property interests in their employment." *Lewis v. Harris*, 965 F. Supp. 1179, 1183 (C.D. Ill. 1997) (collecting Illinois cases); see also *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011) ("It is well-settled that probationary public employees do not possess a property interested in continued employment and thus have no right to procedural due process before their

employment may be terminated."); *Vadala v. Civil Serv. Bd. of Metro. Sanitary Dist. of Greater Chicago*, 366 N.E.2d 558, 560-61 (Ill. App. 1977) ("[A] probationary employee may be discharged without a hearing. To hold that plaintiff is entitled to a hearing would negate the purpose of the probationary period." (internal citations omitted)). Varallo has not cited any authority or fact that would indicate that he has a property interest in his probationary employment sufficient to overcome this general rule. *Cf. Lewis v. Hayes*, 505 N.E.2d 408 (Ill. App. Ct. 1987) (concluding plaintiff had a protectable property interest in his employment as a probationary officer because the applicable rules specifically prescribed procedures for the removal of probationary employees). Thus, Varallo has not alleged facts sufficient to establish a property interest in his position as a probationary officer.

Even if Varallo could establish that he had a property interest in his employment as a probationary officer, both Plaintiffs—including Varallo—fail to allege facts establishing that the State Defendants deprived them of any property interest in their employment. Indeed, Lawlor does not even respond to the State Defendants' argument that Plaintiffs fail to allege that the State Defendants played only role in any alleged deprivation, instead requesting leave to amend. [51, at 27.] Varallo does respond, but fails to cite any case or authority supporting his argument that the State Defendants deprived him of his property interest in his employment even though Plaintiffs have not alleged that the State Defendants played any role in the decision to terminate Plaintiffs' employment. Plaintiffs were not employed by the Illinois State Police. And Plaintiffs do not allege that either the Illinois State Police or any of its employees played any role in the decision to terminate Plaintiffs' employment. Because Plaintiffs do not allege that the State Defendants played any role in the decision to terminate Plaintiffs' employment, Plaintiffs fail sufficiently to allege their procedural due process claim against the State Defendants.

*Horstmann v. St. Clair Cty.*, 295 F. App'x 61, 62 (7th Cir. 2008) (holding that plaintiff failed to state a procedural due process claim because the defendants had no role in the hiring or firing decisions at issue).

Plaintiff Varallo also argues that the MWRD Defendants denied him the opportunity for a "name-clearing" hearing, which he argues negatively impacted his employment opportunities. [55, at 8.] In other words, Plaintiff Varallo argues that the MWRD Defendants deprived him of his occupational liberty. However, in order to bring a due process claim based on an alleged deprivation of occupational liberty, a plaintiff must allege that he is no longer able to obtain a job in his chosen profession. *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010). Although Plaintiff Varallo argues that he "no longer can attain gainful employment in his life long career as a police officer[,]" [55, at 8], there are no factual allegations in the complaint supporting that assertion.

Furthermore, in order to survive a motion to dismiss an occupational liberty interest claim, a plaintiff must allege that the information disseminated about him was false. Where, as here, a plaintiff fails to allege that the charges leveled against him were false, he cannot maintain an action for a deprivation of his occupational liberty. *Clark v. Maurer*, 824 F.2d 565, 566 (7th Cir. 1987) (affirming dismissal of occupational liberty due process claim where the complaint failed to allege that the charges against the plaintiff were false); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 626 (7th Cir. 1986) ("If the employee does not challenge the truthfulness of the stigmatizing charges, there is no purpose to the name clearing hearing."); see also *Codd v. Velger*, 429 U.S. 624, 628 (1977) (per curiam ) (due process requires hearing on discharge of government employee "if the employer creates and disseminates a false and defamatory

impression about the employee in connection with his termination"). Thus, to the extent Plaintiff Varallo seeks to bring an occupational liberty interest claim, his due process claim fails.

Turing to substantive due process, the Seventh Circuit has clarified that the right "is very limited." *Viehweg v. City of Mount Olive*, 559 F. App'x 550, 552 (7th Cir. 2014) (quoting *Tun v. Whitticker*, 398 F.3d 899, 900–02 (7th Cir. 2005)). "This sort of claim is limited to violations of fundamental rights and employment-related rights are not fundamental; an alleged wrongful termination of public employment is not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010) (internal citations omitted); see also *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007); *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005). Plaintiffs have not identified any fundamental right that Defendants allegedly violated.

Without the violation of a fundamental right, Plaintiffs must prove that public officials abused their power, and thereby violated substantive due process, with behavior that "shocks the conscience." See *Rochin v. California*, 342 U.S. 165, 172 (1952); *Viehweg*, 559 Fed. App'x. at 552; *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012). Plaintiffs do not allege that any defendants engaged in behavior that "shocks the conscience."

Finally, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Because Plaintiffs are challenging Defendants' conduct under the First and Fourth Amendments, it is unnecessary for the Court to address Plaintiffs' claims in the terms of substantive due process. *Koutnik v. Brown*, 456 F.3d

777, 781 n.2 (7th Cir. 2006) (holding that district court properly dismissed substantive due process claim where plaintiff challenged defendants' conduct under the First Amendment); *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) ("The Supreme Court has made it clear that a substantive due process claim may not be maintained when a specific constitutional provision (here the Fourth Amendment) protects the right allegedly violated." (citing *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997); *Graham v. Connor*, 490 U.S. 386, 394 (1989))). Thus, Plaintiffs fail to state a procedural due process or a substantive due process claim against the State Defendants or the MWRD Defendants. Count III therefore is dismissed without prejudice.

### iv.     Equal Protection

Count IV alleges that the State Defendants and the MWRD Defendants violated Plaintiffs' constitutional right to equal protection. The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination. The typical equal protection case involves discrimination by race, national origin, or sex; however, the Equal Protection Clause also prohibits the singling out of a person for different treatment for no rational reason. A claim that the government singled a plaintiff out for different treatment for no rational reason is referred to as a class-of-one claim. *Jarmuth v. City of Chicago*, 43 F. Supp. 3d 889, 893 (N.D. Ill. 2014). The classic class-of-one claim is illustrated when a public official, "with no conceivable basis for his action other than spite or some other improper motive * * * comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005); see also *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013).

To state an equal protection claim based on a class-of-one theory, a plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment." *Id*. at 601-02 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).   Defendants have moved to dismiss Plaintiffs' equal protection claim, arguing that Plaintiffs fail sufficiently to allege (1) that similarly situated individuals were treated differently, or (2) that Defendants acted with the requisite animus— without any rational basis.  In addition, Plaintiffs must demonstrate as an essential element of their equal protection claim that they were treated differently than someone who is "*prima facie* identical" in all relevant respects.  *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

Plaintiffs fail sufficiently to allege class-of-one (or in this case, a class-of-two) equal protection claim against the MWRD Defendants.  Plaintiffs allege that they "have been treated differently than similarly situated individuals when Plaintiffs' private conversation was utilized and relied upon by [the MWRD Defendants] to terminate the employment of Plaintiffs."  [1, at ¶ 125.]  Plaintiffs further allege that they "have been treated differently than similarly situated individuals when the CD with Plaintiffs' private conversation was given to the media by" the MWRD Defendants.  *Id*. at ¶ 124.   However, Plaintiffs do not allege facts beyond these conclusory assertions establishing that any similarly situated person was treated differently by the MWRD Defendants.

The complaint does reference a 2013 decision by Defendant Korcal not to use as evidence a recording made by a female officer accusing a co-worker of creating a hostile work environment in an investigation of the co-worker's conduct because the recording was made without the co-worker's knowledge or permission.  [1, at ¶¶ 64-65.]   But this point of comparison is not enough to support Plaintiffs' class-of-one equal protection claim.

The Seventh Circuit has held that "even at the pleading stage a class-of-one plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis." *Jackson v. Vill. of W. Springs*, 612 F. App'x 842, 846-47 (7th Cir. 2015) (quotations omitted). As long as the Court can "come up with a rational basis for the challenged action, that will be the end of the matter—animus or no." *Id*. A "presumption of rationality" attaches to government action challenged in class-of-one claims. *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 548 (7th Cir. 2008) (affirming dismissal of class-of-one claim based on plaintiff's failure "to overcome the presumption of rationality that attaches to government actions in a class of one equal protection case").

Here, the Court can conceive of many rational bases for excluding a recording of an employee made be a fellow employee, but not excluding a recording made by the Illinois State Police. For example, an employer might not want to appear to endorse an employee surreptitiously recording a co-worker. Such a concern would not be at issue with a recording received from the Illinois State Police. Plaintiffs therefore have failed to allege facts establishing the necessary elements of their class-of-one claim against the MWRD Defendants.

Furthermore, the Supreme Court has explicitly held that "a 'class-of-one' theory of equal protection has no place in the public employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008). In so holding, the Supreme Court considered the "traditional view of the core concern of the Equal Protection clause as a shield against arbitrary classifications." *Id*. at 598. In acting as an employer, the government's actions "by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments." *Id*. at 603. Thus, "[t]o treat employees differently is not to classify them in a way that raises equal protection concerns," but rather, "it is simply to exercise the broad discretion that typically

characterizes the employer-employee relationship." *Id*. at 605. To allow a class-of-one challenge in these circumstances "would undermine the very discretion that such state officials are entrusted to exercise." *Id*. at 603. Accordingly, Count IV of the complaint is dismissed with prejudice as to the MWRD Defendants.

Plaintiffs also fail sufficiently to allege a class-of-one equal protection claim against the State Defendants. Plaintiffs allege that they "have been treated differently than similarly situated individuals when the Plaintiffs' private conversation was copied to a CD by Defendants Illinois State Police, Gutierrez, Tencza and Stec, and a criminal investigation was commenced by the Illinois State Police." [1, at ¶ 122.]. This allegation is insufficient to establish that Plaintiffs were treated differently than someone who is "*prima facie* identical" in all relevant respects. Accordingly, Count IV of the complaint is dismissed without prejudice as to the State Defendants.[4]

### D.  Electronic Communication Privacy Act

Count V alleges that the State Defendants and the MWRD Defendants violated the Electronic Communication Privacy Act ("Wiretap Act"). "The Wiretap Act prohibits intentionally intercepting an oral conversation, as well as intentionally disclosing or using the contents of such a conversation while having reason to know that it was unlawfully intercepted." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (internal citations omitted). The Wiretap Act defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

---

[4] Although the Court is dismissing Plaintiffs' equal protection claim against the MWRD Defendants with prejudice, this is because of the Supreme Court's holding that "a 'class-of-one' theory of equal protection has no place in the public employment context." *Enquist*, 553 U.S. at 594.

Plaintiffs admit that the State Defendants did not intentionally overhear the conversation between Plaintiffs.  [51, at 5; 55, at 9 (adopting and incorporating Plaintiff Lawlor's response).] Specifically, "Plaintiffs do not allege that overhearing the conversation was intentional as" the State Defendants could not "help what came through *on their radio*."  [51, at 5 (emphasis added).]  Because the Wiretap Act does not apply to inadvertent interceptions, *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010), the State Defendants did not violate the Wiretap Act by unintentionally overhearing the conversation coming through on the Chicago North radio channel.

Plaintiffs seem to argue, however, that the State Defendants violated the Wiretap Act when they did not stop recording the Chicago North radio channel once they became aware that they were unintentionally intercepting the conversation between Plaintiffs.  The recording of a conversation can constitute an "interception" as defined by the Wiretap Act.  18 U.S.C. § 2510(4); see also *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740 (4th Cir. 1994) ("The recording of a telephone conversation alone constitutes an 'aural * * * acquisition' of that conversation."  (citations omitted)).  However, when a conversation is lawfully overheard, the recording of that same conversation does not constitute an "interception" for the purposes of the Wiretap Act.  *United States v. Harpel*, 493 F.2d 346, 350 (10th Cir. 1974) ("We agree with appellant that the recording of a conversation is immaterial when the overhearing is itself legal."); *Matter of John Doe Trader No. One*, 722 F. Supp. 419, 421 (N.D. Ill. 1989) ("In this case, it seems to us that the undercover agent aurally acquired the utterances of Doe by means of his naked ear.  The recording device simply preserved what it was the agent was hearing independently of the device.").

Furthermore, Plaintiffs do not allege facts sufficient to establish that the State Defendants intended to record *Plaintiffs' conversation*. It is likely—based on the experience of the Court and common sense—that the Illinois State Police constantly record communications occurring on its private police radio channel. Indeed, Plaintiffs implicitly recognize this fact by arguing that once the State Defendants "realized the transmission of the conversation was private in nature, and not an emergency call, the recording should have stopped." [51, at 4.] Plaintiffs do no allege that the State Defendants began recording the Chicago North radio station with the intent to capture Plaintiffs' conversation. To the contrary, the allegations in the complaint indicate that the Illinois State Police took steps to get Plaintiffs to end their oral conversation. According to the complaint, Illinois State Police Telecommunication Specialist Angie Vandenberg attempted to get Plaintiffs' attention and attempted to communicate with Plaintiffs, directing whoever was "talking about Christmas decorations" to "stop talking." [1, at ¶ 34.] Plaintiff further alleges that once Sgt. Rodney Collins figured out that it was MWRD personnel that were inadvertently broadcasting over the Chicago North radio channel, he contacted "[Sgt. Patrick] Kennedy at the MWRD and the transmission ended shortly thereafter." *Id.* at ¶¶ 41-42. Thus, Plaintiffs fail to allege facts sufficient to establish that the Illinois State Police intended to record their conversation.

Even if the recording of Plaintiffs' conversation violated their statutory rights under the Wiretap Act, it was not a violation of any clearly established statutory right. In ascertaining whether a right is clearly established, the Court considers controlling Supreme Court and Seventh Circuit precedent. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009). There are no controlling cases establishing that the police violate the Wiretap Act by continuing to record a radio channel dedicated by law to police use. Indeed, other than cases discussing the general

purpose of the Wiretap Act, the only cases Plaintiffs cite in support of their argument that the State Defendants violated the Wiretap Act by recording their conversation are from the Fourth Circuit. None of the cases cited by Plaintiff address whether the police violate the Wiretap Act by continuing to record a radio channel dedicated to police use by law when the conversation inadvertently is intercepted. Thus, even if the Illinois State Police violated the Wiretap Act by recording Plaintiffs' conversation, the individual State Defendants would be entitled to qualified immunity.

Plaintiffs Wiretap Act claim also fails because—as discussed above—Plaintiffs have not alleged facts sufficient to establish that they had a reasonable expectation of privacy in their communications. The Wiretap Act defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C.A. § 2510 (2). Congress drafted the definition of "oral communication" to reflect the Supreme Court's standards for determining when a reasonable expectation of privacy exists. *United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993); *United States v. Clark*, 22 F.3d 799, 801 (8th Cir. 1994). As discussed above, Plaintiffs have not alleged facts sufficient to conclude that they had a reasonable expectation of privacy. Thus, Plaintiffs Wiretap claim fails for this reason as well.

The Court also notes that the Illinois State Police may also be able to invoke the law enforcement exception written into the Wiretap Act. The Wiretap Act creates a law enforcement exception by defining "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than any telephone or telegraph instrument, equipment or facility, or any component thereof * * * being

used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). The Seventh Circuit has indicated—albeit in dicta—that the incidental recording of guards' personal conversations on a prison's main telephone line would be covered by the law enforcement exception if the recording device was "being used" within the ordinary course of a prison warden's duties to record calls from the public into a prison. *Amati v. City of Woodstock,* 176 F.3d 952, 955–56 (7th Cir. 1999). Because the State Defendants have not invoked the law enforcement exception, and because Plaintiffs' Wiretap Act claim is deficient in other respects, the Court declines to further address this issue at this time.

Furthermore, because the Illinois State Police did not violate the Wiretap Act by overhearing and recording Plaintiffs' conversation, their subsequent copying and distribution of tapes of the conversation did not violate the Wiretap Act. Liability under 18 U.S.C. § 2511(1)(c) and (d) is limited to cases when the defendant knows or has reason to know that the communication was obtained unlawfully. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 753 (7th Cir. 2010) (granting summary judgment for the defendant where there was insufficient evidence "to base a reasonable inference that he knew the recording was illegally obtained"); *Forsyth v. Barr*, 19 F.3d 1527, 1538 (5th Cir. 1994) ("Liability for disclosure or use requires proof that it was intentional, that the information was obtained from an intercepted communication, and that the defendant knew or should have known that the interception was illegal."). Here, because Plaintiffs have not alleged facts establishing that the initial interception was unlawful, Defendants cannot be liable for any subsequent use or disclosure of the conversation. Accordingly, Count V of the complaint is dismissed. Because Plaintiffs cannot

establish a reasonable expectation of privacy in a conversation that was lawfully overheard by the Illinois State Police, Count V is dismissed with prejudice.

###### E.    State-Law Claims

All Defendants, including Motorola, moved to dismiss Plaintiffs' state-law claims. With respect to the claims brought against Motorola, neither Plaintiff responded to the arguments raised in Motorola's motion to dismiss. However, the Court need not rule on the arguments for dismissing Plaintiffs' state-law claims against any Defendant. Because the Court is dismissing Plaintiffs' federal claims, the Court also dismisses Plaintiffs' state-law claims against all Defendants without prejudice. "The usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.'" *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)); see also *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, which the plaintiff can then prosecute in state court.") (citations omitted); *Curry v. Advocate Bethany Hosp.*, 204 F. App'x 553, 558 (7th Cir. 2006) ("The district court properly dismissed the pendant state-law tort claims without prejudice because the federal claims were dismissed at screening.") (citing 28 U.S.C. § 1367(c); *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 564-65 (7th Cir. 2005)).

###### IV.    Conclusion

For the reasons explained above, Defendants' motions to dismiss [32; 35; 38] are granted. To the extent Plaintiffs' claims are not dismissed with prejudice, Plaintiffs are given until April

16, 2018 to file an amended complaint, if Plaintiffs believe they can cure the deficiencies identified above.   The case is set for status on April 24, 2018 at 9:00 a.m.


Dated: March 13, 2018

                                                               _____

                                                               Robert M. Dow, Jr.
                                                               United States District Judge