# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENIS LAWLOR and DANIEL VARALLO, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, et al., | ) ) ) ) |
| Defendants. | ) |

Case No. 17-cv-117

Judge Robert M. Dow, Jr.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' motion for reconsideration [71] of the Court's March 13, 2018 order. For the reasons set forth below, Plaintiffs' motion for reconsideration [71] is granted in part and denied in part. After careful consideration of the briefs and the original complaint, the Court does not believe that it misapprehended any argument that Plaintiffs actually made, nor does it find any manifest errors in its legal analysis. However, given that Plaintiffs had no prior opportunity to amend their complaint and obviously feel that the they did not articulate the factual basis for their claims with the degree of clarity that they would bring to an amended complaint, the Court will vacate the "with prejudice" aspect of the prior dismissal order for all claims except for those barred by the Eleventh Amendment and will allow Plaintiffs a full opportunity to replead as to both the facts their legal theories. If the amended complaint does not survive a renewed motion to dismiss, absent unusual circumstances the claims will be dismissed with prejudice. Plaintiffs are given until April 29, 2019 to file an amended complaint. The case is set for further status on May 8, 2019 at 9:00 a.m.

**I.     Background[1]**

This lawsuit stems from the alleged malfunction of a handheld radio manufactured by Motorola Solutions, Inc. ("Motorola"), which caused a conversation between Plaintiffs Denis Lawlor and Daniel Varallo to be inadvertently broadcast over a radio channel dedicated to the Illinois State Police.  A recording of the conversation was copied and given to Plaintiffs' employer, resulting in their termination.  Defendants Major Luis Gutierrez, Lieutenant Cynthia Tencza, Karen Stec, and the Illinois State Police (collectively, the "State Defendants") and Defendants Metropolitan Water Reclamation District of Greater Chicago ("MWRD"), Kaye Heidenreich, David St. Pierre, and Denise Korcal (collectively, the "MWRD Defendants) moved to dismiss Plaintiffs' complaint.  On March 13, 2018, the Court granted Defendants' motions to dismiss. [See 67.]  Given the Court's ruling on Defendants' motions to dismiss, the Court assumes familiarity with this matter and addresses relevant allegations where pertinent to Plaintiffs' arguments in support of reconsideration.

**II.    Legal Standard**

Because there has not yet been a final judgment in this case, Federal Rule of Civil Procedure ("Rule") 54(b) governs Plaintiffs' motion for reconsideration.  Under Rule 54(b), "any order or other decision [ ] that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also *Rothwell Cotton Co. v. Rosenthal & Co.*, 827

---

[1] For purposes of ruling on Defendants' motions to dismiss, the Court accepted as true all of Plaintiffs' well-pleaded factual allegations and drew all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

F.2d 246, 251 (7th Cir.), opinion amended on denial of reh'g, 835 F.2d 710 (7th Cir. 1987) (affirming district court's denial of motion to reconsider under Rule 54(b)).

Revisions under Rule 54(b) are discouraged and should be reserved for circumstances in which the initial decision was "clearly erroneous and would work a manifest injustice." See *Ghashiyah v. Frank*, 2008 WL 680203, at *3 (E.D. Wis. Mar. 10, 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (internal quotation marks omitted). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *Id*. (citation and internal quotation marks omitted). Motions to reconsider under Rule 54(b) "are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)." *Ghashiyah*, 2008 WL 680203, at *3. The Court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial, points to evidence in the record that clearly establishes a manifest error of law or fact, or if the Court previously misunderstood a party's arguments. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012); *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Rule 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller*, 683 F.3d at 813 (citation and internal quotation marks omitted). Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Id*. (citation and internal quotation marks omitted). Additionally, "'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). A party moving for reconsideration bears a heavy burden and its motion must be supported

by a showing of extraordinary circumstances. *Mahurkar v. C.R. Bard, Inc.*, 2003 WL 22844237, at *1 (N.D. Ill. Dec. 1, 2003) (citing *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)).

### III. Analysis

#### A. Eleventh Amendment

The Court dismissed Plaintiffs' monetary claims against the Illinois State Police and Plaintiffs' claims against officials of the Illinois State Police (Defendants Major Luis Gutierrez, Lieutenant Cynthia Tencza, and Karen Stec) in their official capacities as barred by the Eleventh Amendment. The Court also found that Plaintiffs lacked standing to seek injunctive relief against these Defendants. Plaintiffs seek reconsideration of that decision. Specifically, Plaintiffs argue that only those persons who have had conversations intercepted and recorded have standing to seek injunctive relief to challenge Defendants' conduct.

"To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of *future injury* as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (emphasis added) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief: 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief * * * if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *Lyons*, 461 U.S. at 95-96). Plaintiffs attempt to limit the scope of *Simic*, arguing that its holding should be limited to cases in which the plaintiff is seeking injunctive relief with respect to the threat of prosecution for a violation of criminal law.[2] However, the Seventh Circuit has not limited

---

[2] Plaintiffs assert that *Simic* holds "that an assertion by a litigant that she would be prosecuted for violation of valid criminal law cannot form the basis of real and immediate future injury." [71, at 6-7 (citing *Simic*,

4

the requirement that a plaintiff have standing to seek each form of relief to any particular category of cases. See, *e.g., Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 813 (7th Cir. 2018) (applying general rule that "a plaintiff must have standing for each form of relief sought" in case for declaratory relief under the First Amendment).

To the extent that the malfunction challenged in this lawsuit continues to occur, employees still working for the MWRD may have standing to seek injunctive relief. Such persons—at least theoretically—could establish an immediate threat of future injury. But Plaintiffs no longer work for the MWRD. [1, at ¶¶ 68-69.] Plaintiffs have not alleged any facts indicating that they face a real or immediate threat of future injury resulting from any alleged misconduct on the part of the State Defendants. Plaintiffs therefore lack standing to seek injunctive relief against the State Defendants. The Court denies Plaintiffs' motion for reconsideration of the dismissal with prejudice of their claims against the Illinois State Police and their claims against officials of the Illinois State Police (Defendants Major Luis Gutierrez, Lieutenant Cynthia Tencza, and Karen Stec) in their official capacities.

### B. Constitutional Claims

#### i. First Amendment

Count I alleges that the State Defendants and the MWRD Defendants violated Plaintiffs' First Amendment right to free speech. The complaint alleges that the State Defendants' decision "to record the Plaintiffs' private conversation without their knowledge and permission" and "to disseminate the recording of Plaintiffs' private conversation without their knowledge and permission violated" their First Amendment rights to free speech. [1, at ¶¶ 82-83.] In ruling on

---

851 F.3d at 738).] That is an inaccurate statement of *Simic*'s holding. Although the Seventh Circuit recognized that a plaintiff would have standing to challenge a criminal statute if she could show that there was a real and immediate threat that she would be prosecuted under the statute, the Seventh Circuit concluded that plaintiff's claimed threat of future injury was conjectural. *Simic*, 851 F.3d at 738.

Defendants' motions to dismiss, the Court noted that it was unclear whether Plaintiffs sought to bring a First Amendment retaliation claim or a First Amendment claim based on a purported stand-alone right not to have their conversation recorded and/or disseminated.

To the extent that Plaintiffs sought to bring a First Amendment retaliation claim, the Court concluded that Plaintiffs failed to allege facts establishing that their speech was a matter of public concern. The Court therefore dismissed Plaintiffs' retaliation claim with leave to replead. To the extent Plaintiffs sought to bring a First Amendment claim based on a purported First Amendment right not to have their conversation recorded and/or disseminated, the Court concluded that Plaintiffs failed to state a claim. With respect to the MWRD Defendants, Plaintiffs failed to allege that they recorded or disseminated their private conversation. Furthermore, the Court concluded that there was no stand-alone First Amendment right not to have a conversation recorded and/or disseminated, much less any cases clearly establishing a First Amendment violation under the particular facts of this case. The Court therefore concluded that the State Defendants and the MWRD Defendants were entitled to qualified immunity with respect to that theory and dismissed Plaintiffs' First Amendment claim with respect to that theory with prejudice.

Plaintiffs argue that additional factual content from the underlying administrative record could have aided the Court's decision. Specifically, Plaintiffs assert that "[t]he State Defendants participated in the underlying administrative proceedings against Plaintiff Lawlor during which most of the First Amendment violation bases were discussed but unable to be ruled upon because of the limits of administrative proceedings." [71, at 6.] However, Plaintiffs fail to explain how any additional facts would change the Court's disposition of their First Amendment claim. Plaintiffs do not identify any facts indicating that Plaintiffs' speech was a matter of public concern, as necessary to state a First Amendment retaliation claim. *Milsap v. City of Chicago*, 2018 WL

488270, at *4 (N.D. Ill. Jan. 19, 2018). (And, in any event, the Court dismissed Plaintiffs' First Amendment retaliation claim without prejudice.) Furthermore, Plaintiffs again fail to identify any authority indicating that there is a stand-alone First Amendment right not to have a conversation recorded and/or disseminated. Plaintiffs fail to identify any basis for concluding that the Court's dismissal with prejudice of any First Amendment claim based such a right was in error. However, consistent with the Court's observations above, the Court will vacate the "with prejudice" aspect of its prior order and allow Plaintiff an opportunity to present this claim again so that the Court may consider the law—both on the merits and as to qualified immunity—against any additional facts that Plaintiff may bring forward.

    ii.    *Fourth Amendment*

Count II alleges that the State Defendants and the MWRD Defendants violated Plaintiffs' Fourth Amendment rights.[3] In their motions to dismiss, Defendants argued that Plaintiffs failed to allege facts establishing that they had a reasonable expectation in privacy. In their responses to

---

[3] In their motion for reconsideration, Plaintiffs indicate that they are seeking to bring a Fourth Amendment claim against Defendant Motorola. In ruling on the motions to dismiss Plaintiffs' original complaint, the Court did not understand Plaintiffs to be bringing a Fourth Amendment claims against Motorola, as Plaintiffs did not allege any facts indicating that Motorola acted under color of state law. "When a plaintiff brings a Section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822-23 (7th Cir. 2009). "This requirement is an important statutory element because it sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law." *Id*. at 822-23. Private entities "may be found to act under color of state law [ ] when [they] have conspired or acted in concert with state officials to deprive a person of his civil rights." *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003) (citation omitted). "In order to establish a conspiracy, the plaintiff must demonstrate that the state officials and the private party somehow reached an understanding to deny the plaintiffs their constitutional rights." *Id*. (quoting *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985) (internal quotation marks omitted)). In other words, Plaintiffs must allege that the state and private actors "had an agreement in relations to a shared unconstitutional goal." *T.S. v. Twentieth Century Fox Television*, 2017 WL 4620841, at *2 (N.D. Ill. Oct. 16, 2017) (citation omitted). The complaint does not indicate whether any such agreement exists. If Plaintiffs believe that they can bring a Fourth Amendment claim against Motorola, Plaintiffs may allege facts supporting such a claim in any amended complaint. Counsel should only do so, however, if they belief they can bring such a claim within the bounds of Rule 11.

7

Defendants' motion to dismiss, Defendants conceded that "there is nothing that the [State Defendants] could have done about initially overhearing [Plaintiffs' conversation] because it came upon them through no action of their own," but Plaintiffs argued that the State Defendants "did not need to record, transcribe, and disseminate the tape." [51, at 7; 55, at 7 (incorporating Varallo's response).] The Court read Plaintiffs' briefs as conceding that the State Defendants lawfully overheard Plaintiffs' conversation; the Court concluded that the contemporaneous recording of the conversation and the subsequent transcription and dissemination of the recording did not violate the Fourth Amendment. Plaintiffs move for reconsideration of that decision, contending that they "neither admitted that the State Defendants [sic] overhear was unlawful nor alleged that the State Defendants and Motorola [sic] actions were unintentional in permitting the condition of the StarCom equipment and software to perpetuate and provide the unlawful overhear." [71, at 4.]

Although Plaintiffs now contend that the Court misunderstood their argument and took an isolated statement out of context,[4] as Defendants point out, Plaintiffs repeatedly asserted that the State Defendants did not violate the Fourth Amendment by overhearing their conversation. Specifically, Plaintiffs made the following assertions:

> Negligence would have been hearing the conversation. Recording and disseminating the conversation, which State Defendants were aware was a private conversation, is an intentional act.

---

[4] In their reply, Plaintiffs also assert that—in earlier portions of their opposition—they argued that "the hearing of [their] conversation was through the Defendant's [sic] continued use of knowingly defective equipment that overheard conversations they were not supposed to." [77, at 1-2.] Although Plaintiffs do reference the fact that the State Defendants were aware of the malfunctioning radio, Plaintiffs use that fact to argue that they were on notice that private communications were coming through their radio and that the State Defendants therefore should have stopped listing to the transmission once they realized the conversation was private in nature. Although Plaintiffs argue that the State Defendants should have stopped listening to their conversation when they realized it was not an emergency call, the State Defendants were listening to the Illinois State Police's Chicago North radio channel, which only the Illinois State Police are authorized to access. [1, at ¶¶ 30-31.] It likely would have been very dangerous—and perhaps a dereliction of duty—for the State Defendants to stop listening to their dedicated police radio line. Regardless, Plaintiffs have not identified any authority for concluding that it was clearly established that the State Defendants constitutionally were required to stop listening to their dedicated radio station, especially when they attempted to stop the conversation. [See *id.* at ¶ 34.]

[51, at 4.]

> The Plaintiffs do not allege that the State Defendants did something wrong, at least under the fourth amendment, by overhearing the conversation. The Plaintiffs do not allege that overhearing the conversation was intentional as they cannot help what came through on their radio. The State Defendants are attempting to stop the analysis at the overhearing portion of the facts. The State Defendants do not address the subsequent action taken by them.

[*Id*. at 5.]

> This *Walter* case is exactly analogous to what we are dealing with here. The government entity, in this case the "State Defendants" stumbled into a recording. While there is nothing the state defendants could have done about initially overhearing it because it came upon them through no action of their own, they did not need to record, transcribe, then disseminate the tape. The subsequent copies made, the transcripts made, and the distribution of the tape to other State entities to listen to was an ongoing intentional fourth amendment violation analogous to what the Court held in *Walter*.

[*Id*. at 7.] All of these arguments were raised in the portion of Lawlor's brief addressing his Fourth Amendment claim. [51, at 4-7.]

Although Plaintiffs now attempt to argue that the State Defendants acted with deliberate indifference and with reckless disregard for their Fourth Amendment rights when they failed to fix the malfunction occurring, Plaintiffs did not so argue in their responses to Defendants motion to dismiss. Not only did Plaintiffs concede that State Defendants acted with mere negligence when they initially overheard their conversation, Plaintiffs also indicated that they were challenging the subsequent conduct of the State Defendants, not the antecedent conduct. [51, at 5 ("The State Defendants are attempting to stop the analysis at the overhearing portion of the facts. The State Defendants do not address the *subsequent action* taken by them." (emphasis added)).] Plaintiffs' responses to Defendants' motion to dismiss make clear that their Fourth Amendment claim sought

9

to challenge the conduct occurring after the State Defendants overheard their conversation, not before.[5]

To the extent that Plaintiffs contend that they actually did argue that the State Defendants violated their Fourth Amendment rights by failing to fix a malfunctioning radio in just over a month after learning of the malfunction—a position the Court finds untenable with the statements quoted above—Plaintiffs did not cite any cases supporting the conclusion that such a failure amounts to a violation of their constitutional rights. Nor do Plaintiffs cite to any such cases in their motion for reconsideration or in their reply. Even assuming such a right exists, the Court is not aware of any cases clearly establishing such a right. Thus, to the extent that Plaintiffs sought to bring a Fourth Amendment claim based on Defendants failure to fix a malfunctioning radio, Defendants would be entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 243 (2009) (holding that officers were entitled to qualified immunity where they "did not violate clearly established law"). Again, however, in an abundance of caution, the Court will vacate the "with prejudice" aspect of its prior dismissal order to permit Plaintiffs one final attempt to plead each of their Fourth Amendment theories to ensure that the Court has misapprehended neither the allegations as Plaintiff wishes to assert them.

In their reply, Plaintiffs also argue that the Court misapplied the law when it concluded that the Supreme Court's decision in *Walter v. United States*, 447 U.S. 649, 656 (1979), did not save Plaintiffs' Fourth Amendment claim. Because Plaintiffs first raised this argument in their reply

---

[5] The Court also notes that Plaintiffs bring Fourth Amendment claims against the persons who overheard the conversation and/or otherwise reproduced the conversation. There is no indication in the complaint that Plaintiffs are seeking to bring Fourth Amendment claims against persons who were responsible for fixing the malfunctioning radio. "To establish personal liability in a [Section] 1983 action, the plaintiff must show that the officer 'caused the deprivation of a federal right.'" *Luck v. Rovenstine*, 168 F.3d 323, 327 (7th Cir. 1999) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

brief, the argument is waived for purposes of this motion for rehearing. *West v. MeadWestvaco Corp.*, 81 F. App'x 74, 75 (7th Cir. 2003) ("[A]rguments presented for the first time in a reply brief are waived." (citation omitted)). In any event, the argument also lacks merit. In response to Defendants' motion to dismiss, Plaintiffs argued that Justice White's concurring opinion in *Walter* saved its Fourth Amendment claim, as it indicated that the government would have to obtain a warrant for any subsequent viewings of a film already viewed by a third-party who could testify as to its contents. Plaintiffs relied on Justice White's opinion to argue that State Defendants needed a warrant to record, transcribe, and disseminate Plaintiffs' conversation. [51, at 7.] To the extent that Justice White's concurring opinion stood for the proposition that the government would have to obtain a warrant for any subsequent viewings of a film already viewed by a third-party who could testify as to its contents, the Court concluded that position was not controlling law.

In support of that conclusion, the Court cited *United States v. Jacobsen*, which held that "[t]he Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." 466 U.S. 109, 117 (1984). In that case, the employees of a private freight carrier observed a white powdery substance, which was originally concealed within eight layers of wrappings, during their examination of a damaged package. "They summoned a federal agent, who removed a trace of the powder, subjected it to a chemical test and determined that it was cocaine." *Id.* After being convicted of possession of an illegal substance with intent to distribute, the defendants challenged their conviction on the ground that the agent's examination of the box violated the Fourth Amendment. *Id.* It was not clear whether the powder was visible to the agent when he arrived on the scene, but the Supreme Court concluded that "[e]ven if the white powder was not itself in 'plain view' because it was still enclosed in so many containers and covered with papers, there was a virtual certainty that nothing

11

else of significance was in the package and that a manual inspection of the tube and its contents would not tell him anything more than he already had been told." *Id*. at 119. The Court reasoned:

> Respondents do not dispute that the Government could utilize the Federal Express employees' testimony concerning the contents of the package. If that is the case, it hardly infringed respondents' privacy for the agents to reexamine the contents of the open package by brushing aside a crumpled newspaper and picking up the tube. The advantage the Government gained thereby was merely avoiding the risk of a flaw in the employees' recollection, rather than in further infringing respondents' privacy. Protecting the risk of misdescription hardly enhances any legitimate privacy interest, and is not protected by the Fourth Amendment. Respondents could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents. The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment. Similarly, the removal of the plastic bags from the tube and the agent's visual inspection of their contents enabled the agent to learn nothing that had not previously been learned during the private search. It infringed no legitimate expectation of privacy and hence was not a "search" within the meaning of the Fourth Amendment.

*Id*. (internal citations omitted).

Defendants argue that *Jacobson* does not undermine Justice White's opinion in *Walter*, citing the following language:

> Unlike the opening of the packages that destroyed their privacy by exposing their contents to the plain view of subsequent observers, a private screening of the films would not have destroyed petitioners' privacy interest in them. Thus the Government's subsequent screening of the films constituted an independent, governmental search that would have infringed petitioners' Fourth Amendment interests without regard to any previous screening by private parties.

*Walter*, 447 U.S. at 662 (White, J., concurring). According to Plaintiffs, the result in *Jacobson* necessarily follows from this language in Justice White's concurring opinion in *Walter*. However, in *Jacobson*, the Supreme Court found it irrelevant whether the contents of the box at issue were in plain view of federal agents when they manually examined the contents of the package. The Supreme Court concluded that the defendant's fourth amendment rights were not violated when a federal agent "removed a tube from the box, the plastic bags from the tube and a trace powder

12

from the innermost bag" because "there was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell him anything more than he already had been told." *Jacobsen*, 466 U.S. at 119. Thus, while the quoted language in Justice White's concurring opinion in *Walter* indicates that only items in plain view lose any privacy interest, *Jacobsen* makes clear that, as long as the government does "not exceed the scope of the private search, [the government] may view or replicate the results of that search without violating the Fourth Amendment." *United States v. Shelton*, 418 F. App'x 514, 517 (7th Cir. 2011) (citing *United States v. Jacobsen*, 466 U.S. 109, 113-16 (1984)); see also *United States v. Hall*, 142 F.3d 988, 993 (7th Cir. 1998).

Here, Plaintiffs failed to allege that the State Defendants violated their constitutional rights by overhearing their conversation. Because the State Defendants could testify as to the contents of the conversation, they did not violate Plaintiffs' Fourth Amendment rights by recording, transcribing, and/or copying the conversation that they lawfully overheard. This case is unlike *Walter*, in which the Court held the government violated the defendants' Fourth Amendment right to privacy by viewing pornographic films turned over by a third-party without obtaining a search warrant when the third-party had been unable to determine what was on the films. 447 U.S. 649 (1979). Because the State Defendants here were able to testify about the contents of Plaintiffs' conversation, *Walter* is inapplicable, as the Court discussed in its prior order.

Finally, Plaintiffs argue that the Court failed to comprehend the distinction between *acquiring* the conversation and *preserving* the conversation. However, Plaintiffs did not make this argument in their opposition to Defendants' motion to dismiss. Motions to reconsider are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Miller*,

683 F.3d at 813 (citation and internal quotation marks omitted). Regardless, the Court again finds Plaintiffs' argument meritless. In ruling on Defendants' motion to dismiss, the Court cited to a long line of cases holding that the recording or transmitting of a conversation legally overheard does not violate the Fourth Amendment. [67, at 19 (collecting cases).] While it is true that the State Defendants overhead the conversation through the radio, Plaintiffs do not contend that the State Defendants lacked authority to listen to the Illinois State Police's Chicago North radio channel. To the contrary, *only* the Illinois State Police are authorized to access that channel. [1, at ¶¶ 30-31.] Given that the State Defendants were not acting unconstitutionally when overhearing Plaintiffs' conversation on the channel—albeit through the use of a radio—they did not violate Plaintiffs' Fourth Amendment rights by continuing to record the conversation about which they could testify. Accordingly, the Court rejects Plaintiffs' reading of the cases cited above.

   iii. *Equal Protection*

Count IV alleges that the State Defendants and the MWRD Defendants violated Plaintiffs' constitutional right to equal protection. The Court dismissed Plaintiffs' equal protection claim because Plaintiffs failed sufficiently to allege a class-of-one (or in this case class-of-two) equal protection claim. The dismissal of Plaintiffs' equal protection claim against the MWRD Defendants was with prejudice because claims brought under "a 'class-of-one' theory of equal protection has no place in the public employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008). Plaintiffs seek reconsideration of that decision, arguing that the Court improperly viewed their equal protection claim "as a 'class of two' theory in a public employment dispute." [71, at 4.]

However, Plaintiffs did not respond to this argument in their responses to the MWRD Defendants' motion to dismiss, which raised the issue. It therefore is an inappropriate argument

for a motion for reconsideration, which is "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered" its decision. *Miller*, 683 F.3d at 813. Furthermore, even in their motion for reconsideration, Plaintiffs fail to cite to any cases indicating that their equal protection claim against the MWRD Defendants should not be treated as arising in the employment context. Plaintiffs also fail to explain as a factual matter how any of the alleged equal protection violations on the part of the MWRD Defendants do not relate to the employment context. However, the Court will allow Plaintiff to attempt to replead this claim as well, and thus the "with prejudice" aspect of the prior dismissal order is vacated.

    C.    **Electronic Communication Privacy Act**

Count V alleges that the State Defendants and the MWRD Defendants violated the Electronic Communication Privacy Act ("Wiretap Act").[6] Plaintiffs move for reconsideration of the dismissal of their claim under the Wiretap Act on the same grounds that they moved for reconsideration of their Fourth Amendment claim—namely, the Court misunderstood Plaintiffs to be admitting that the State Defendants did nothing wrong when they overheard Plaintiffs' conversation on the radio. Again, the Court finds this position untenable with the numerous statements made by Plaintiffs in their oppositions to Defendants' motions to dismiss. In addition to the statements Plaintiffs made regarding their Fourth Amendment claim, Plaintiffs also made the following assertions regarding the Wiretap Act claim:

> The plaintiffs are not alleging that the interception and recording was intentional or surreptitious. The plaintiff's allegations are centered on the fact that the transcribing and disclosure of [the conversation] was the knowing and intentional

---

[6] In their motion for reconsideration, Plaintiffs indicate that they are seeking to bring a Wiretap Act claim against Defendant Motorola. Again, in ruling on the motions to dismiss Plaintiffs' original complaint, the Court did not understand Plaintiffs to be bringing a Wiretap Act claim against Motorola, as Plaintiffs did not allege that Motorola intercepted, disclosed, or otherwise used an oral conversation. If Plaintiffs believe that they can bring a Wiretap Act claim against Motorola, Plaintiffs may allege facts supporting such a claim in any amended complaint. Again, counsel should only do so if they belief they can bring such a claim within the bounds of Rule 11.

act that violates the statute.

[51, at 22-23.]

> Once again, in an ongoing pattern, the State Defendants keep limiting their focus to the fact that the transmission appearing on their radio had nothing to do with them. This is not the Plaintiff's contention of State Defendant's wrong doing. Once again the intrusion is not the initial overhearing of the conversation. It is continuing to listen once you know you are not welcome. It is the transcription and dissemination to others.

[*Id*. at 23.] The Court finds it very unlikely that Plaintiffs will be able to establish that the State Defendants violated the Wiretap Act by recording, transcribing, and/or disseminating the lawfully overheard conversation. When a conversation is lawfully overheard, the recording of that same conversation does not constitute an "interception" for the purposes of the Wiretap Act. *United States v. Harpel*, 493 F.2d 346, 350 (10th Cir. 1974) ("We agree with appellant that the recording of a conversation is immaterial when the overhearing is itself legal."); *Matter of John Doe Trader No. One*, 722 F. Supp. 419, 421 (N.D. Ill. 1989) ("In this case, it seems to us that the undercover agent aurally acquired the utterances of Doe by means of his naked ear. The recording device simply preserved what it was the agent was hearing independently of the device.").

In any event, there is a second obstacle: the Court also concluded that Plaintiffs failed to establish that the State Defendants violated any clearly established statutory right and therefore concluded that they were entitled to qualified immunity on Plaintiffs' Wiretap Act claim. In their oppositions to Defendants' motions to dismiss, Plaintiffs failed to cite any cases clearly establishing that the State Defendants' failure to fix the malfunction occurring on their radio is sufficient to establish liability under the Wiretap Act.[7] Plaintiffs also fail to cite any such authority in their motion for reconsideration.

---

[7] Excluding cases cited in their discussion about the history and generally purpose of the Wiretap Act, Plaintiffs only cited to cases from the Fourth Circuit in their responses to Defendants' motions to dismiss. [51, at 14-15; 55, at 9 (incorporating Varallo's response).] However, in ascertaining whether a right is

Finally, Plaintiffs argue that the MWRD Defendants further violated the Wiretap Act when the unlawful intercept was further published to the press and another third party. However, as discussed in the Court's order on Defendants' motions to dismiss, liability under 18 U.S.C. § 2511(1)(c) and (d) is limited to cases when the defendant knows or has reason to know that the communication was obtained unlawfully. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 753 (7th Cir. 2010) (granting summary judgment for the defendant where there was insufficient evidence "to base a reasonable inference that he knew the recording was illegally obtained"); *Forsyth v. Barr*, 19 F.3d 1527, 1538 (5th Cir. 1994) ("Liability for disclosure or use requires proof that it was intentional, that the information was obtained from an intercepted communication, and that the defendant knew or should have known that the interception was illegal.").

In sum, to date Plaintiffs have not alleged facts establishing that the initial interception was unlawful, and unless they can do so in their amended pleading, Defendants will not be liable for any subsequent use or disclosure of the conversation.[8] Accordingly, the Court denies Plaintiffs' motion for reconsideration of the dismissal of its Wiretap Act claim—again, with one more opportunity to replead.

## IV. Conclusion

---

clearly established, the Court considers controlling Supreme Court and Seventh Circuit precedent. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009). Regardless, none of the cases cited by Plaintiffs addressed whether an officer violates the Wiretap Act when they inadvertently overhear and record a conversation because of an equipment malfunction—even a known equipment malfunction.

[8] Even if the initial interception was unlawful, the Wiretap Act only prohibits "intentionally disclosing or using the contents of [an intercepted conversation] while having reason to know that it was unlawfully intercepted[.]" *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (citations omitted). Thus, even if Plaintiffs had not conceded that the State Defendants lawfully overheard the conversation, Plaintiffs have not alleged that the MWRD had any reason to know that the state police unlawfully intercepted the conversation.

For the reasons explained above, Plaintiffs' motion for reconsideration [71] is granted in part and denied in part. After careful consideration of the briefs and the original complaint, the Court does not believe that it misapprehended any argument that Plaintiffs actually made, nor does it find any manifest errors in its legal analysis. However, given that Plaintiffs had no prior opportunity to amend their complaint and obviously feel that the they did not articulate the factual basis for their claims with the degree of clarity that they would bring to an amended complaint, the Court will vacate the "with prejudice" aspect of the prior dismissal order for all claims except for those barred by the Eleventh Amendment and will allow Plaintiffs a full opportunity to replead as to both the facts their legal theories. If the amended complaint does not survive a renewed motion to dismiss, absent unusual circumstances the claims will be dismissed with prejudice. Plaintiffs are given until April 29, 2019 to file an amended complaint. The case is set for further status on May 8, 2019 at 9:00 a.m.

Dated: March 30, 2019

_____
Robert M. Dow, Jr.
United States District Judge