**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DENIS LAWLOR and DANIEL VARALLO, | ) ) | |
| | ) | Case No. 17-cv-117 |
| Plaintiffs, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, et al., | ) ) ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the motion to dismiss [94] filed by Defendants Major Luis Gutierrez, Lieutenant Cynthia Tencza, Karen Stec, and the Illinois State Police (collectively, the "State Defendants"), the motion to dismiss [99] filed by Defendants Metropolitan Water Reclamation District of Greater Chicago ("MWRD"), Kaye Heidenreich, David St. Pierre, and Denise Korcal (collectively, the "MWRD Defendants"), and the motion to dismiss [102] filed by Defendant Motorola Solutions, Inc. ("Motorola"). For the reasons set forth below, Defendants' motions to dismiss [94, 99, 102] are granted with respect to the federal claims (Counts I, II, III, and IV), which are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the state-law claims, dismissing them without prejudice. Civil case terminated.

## I.    Background[1]

This lawsuit stems from the alleged malfunction of a handheld radio manufactured by Motorola, which caused a conversation between Plaintiffs Denis Lawlor and Daniel Varallo to be

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

inadvertently broadcast over a radio channel dedicated to the Illinois State Police. A recording of the conversation was copied and given to Plaintiffs' employer, resulting in their termination.

Plaintiffs Denis Lawlor and Daniel Varallo were police officers for the MWRD. [82] at ¶¶ 26-27. At approximately 1:00 a.m. on January 18, 2015, Plaintiffs were engaged in what they characterize as a private conversation, which was intercepted by the Illinois State Police's Chicago North radio channel. *Id*. at ¶ 46. Only the Illinois State Police were authorized to access and broadcast on the Chicago North radio channel. *Id*. at ¶ 54. The conversation between Plaintiffs lasted approximately 58 minutes. *Id*. at ¶ 56.

Illinois State Police Telecommunication Specialist Angie Vandenberg, who was working as the dispatcher on the Chicago North radio channel, did not recognize the voices of the persons talking. *Id*. at ¶ 57. Vandenberg recognized that Plaintiffs' conversation did not involve official Illinois State Police business or a public safety matter. *Id*. at ¶ 59. Acting Master Sgt. Rodney Collins, who was the midnight shift commander that night, listened to the entire conversation between Plaintiffs as the conversation was being transmitted over the Illinois State Police's Chicago North radio station. *Id*. at ¶ 69-70. Sgt. Collins realized that the conversation between Plaintiffs was not related to any official Illinois State Police business or public safety matter. *Id*. at ¶ 71. Someone from the Illinois State Police—the amended complaint elides over exactly who—contacted the MWRD to ask if it was the source of the transmissions. Sgt. Patrick Kennedy at the MWRD contacted Plaintiffs and the transmission ended. *Id*. at ¶ 75. Plaintiffs allege that the Illinois State Police recorded the entire private conversation between Plaintiffs, but Plaintiffs do not indicate whether the Illinois State Police always recorded the Chicago North radio channel. *Id*. at ¶ 61. It does appear, however, that recording the channel was the normal Illinois State Police practice. See [82] at ¶ 82-83; [95-4] (Illinois State Police Directive ADM-011, Section I.A) ("The

Illinois State Police (ISP) will [u]se logging recorders and console-based instant retrieval at Illinois State Police facilities to record radio channels and emergency telephone lines.").[2] Plaintiffs also fail to indicate who at the Illinois State Police recorded the conversation.

After the incident, Sgt. Collins sent an email to his supervisor Captain Luis Gutierrez (a State Defendant) to document the incident. [82] at ¶ 76. Defendant Gutierrez instructed Sgt. Collins to open an investigation after the incident to determine whether or not there was any "FCC violation," presumably meaning a violation of Federal Communications Commission regulations. *Id*. at ¶ 77. Defendant Gutierrez verbally requested that Karen Stec, a Telecommunications Supervisor for the Illinois State Police and a State Defendant, provide him with a copy of "the communication." *Id*. at ¶ 78. She did not receive a written request from Defendant Gutierrez to copy a recording of the conversation onto a CD. *Id.* at ¶ 81. Defendant Stec had experienced several "open mic" situations in the past, but had never recorded any other open mic situation to a CD. *Id*. at ¶ 77. After listening to the conversation, Defendant Gutierrez realized that the conversation had nothing to do with an emergency situation. *Id*. at ¶ 85. Defendant Gutierrez then gave Illinois State Police Lieutenant Cindy Tencza (a State Defendant) a CD containing Plaintiffs' conversation and directed her to investigate. *Id*. Defendant Gutierrez noted, however, that any such investigation should be closed if the MWRD conducted an internal investigation. *Id*. at ¶ 86.

Defendant Gutierrez did not receive a formal written request or a subpoena from the MWRD for the CD containing the recording of the private conversation between Plaintiffs. *Id*. at ¶ 87. Rather, Defendant Tencza spoke with Kaye Heidenreich (an MWRD Defendant), the Chief

[2] The Court may take judicial notice of this document because its contents are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned," *Driebel v. City of Milwaukee*, 298 F.3d 622, 622 (7th Cir. 2002), *quoting* Fed. R. Evid. 201(b), and because it is incorporated in Plaintiffs' complaint (see [82] at ¶¶ 82-83). *Rosenblum v. Travelbyus.com Ltd*., 299 F.3d 657, 661 (7th Cir. 2002).

of Police for the MWRD, and Defendant Tencza volunteered to give Defendant Heidenreich the CD containing the recording of Plaintiffs' conversation, as long as the MWRD would discipline Plaintiffs based on their statements recorded on the CD. *Id*. at 88. Defendant Tencza delivered a copy of the CD to Defendant Heidenreich on January 22, 2015. *Id*. After Defendant Heidenreich listened to the CD, Denise Korcal (an MWRD Defendant), the Director of Human Resources for the MWRD, was summoned to Defendant Heidenreich's office to listen to a portion of Plaintiffs conversation.[3] *Id*. at ¶ 99. Defendant Korcal called David St. Pierre (an MWRD Defendant), the Executive Director of the MWRD, and ordered that copies and a transcript of Plaintiffs' conversation be made. *Id*. at ¶¶ 100-102. The MWRD provided a copy of the CD to "the press," though the amended complaint does not identify any individuals or even specific media outlets as recipients. *Id*. at 103. The MWRD Defendants used the recording of Plaintiffs' conversation to terminate Plaintiffs' employment with the MWRD. *Id*. at ¶¶ 113-115.

Plaintiffs allege that the conversation was transmitted because of a malfunction in the StarCom communications system used by the Illinois State Police. The Illinois State Police and Motorola jointly created StarCom. *Id*. at ¶ 20. In December 2014, the Illinois State Police became aware that StarCom had a problem that caused it to intercept non-police communications and broadcast them on Illinois State Police radio channels. *Id*. at ¶ 35. Motorola investigated and determined that each of the inadvertent transmissions came from MWRD radios. *Id*. at ¶ 36. The Illinois State Police and Motorola closed their investigation without resolving the problem. *Id*. at ¶ 39.

Separately, Plaintiffs allege that in 2013, a female police officer with the MWRD participated in an internal investigation regarding the behavior of a co-worker who was creating a

---

[3] The Court is forced to use the passive voice here because the amended complaint does so, but presumably Defendant Heidenreich did the summoning.

hostile work environment for the female officer. *Id.* at ¶ 106. The female MWRD officer recorded her fellow male MWRD employee while he was using profanity towards her. On March 20, 2013, Defendant Korcal, wrote the female MWRD officer a letter and informed the female officer, "You stated you inadvertently recorded [the male MWRD employee's] alleged use of profanity, but that recording was obtained without [the male MWRD employee's] knowledge or permission; therefore, it cannot be used as evidence against him." *Id.* at ¶ 107.

Plaintiffs brought this lawsuit bringing claims under 42 U.S.C. § 1983, alleging that the State Defendants and the MWRD Defendants violated Plaintiffs' (1) First Amendment rights, (2) Fourth Amendment rights, and (3) Fourteenth Amendment equal protection rights. Plaintiffs also allege that all Defendants violated the Electronic Communication Privacy Act. Finally, Plaintiffs bring a number of state-law claims against all Defendants, including Defendant Motorola. Defendants moved to dismiss, see [94, 99, and 102], and the Court granted the motions, dismissing some counts with prejudice and others without prejudice. The Court gave Plaintiffs the opportunity to replead the claims dismissed without prejudice, if they could do so consistent with Federal Rule of Evidence 11. See [67]. Plaintiffs moved for reconsideration [71]. The Court granted the motion in part, vacating the "with prejudice" aspect of its prior dismissal order for all claims except those barred by the Eleventh Amendment. [78] at 1. The Court allowed Plaintiffs "a full opportunity to replead as to both the facts and their legal theories," warning that if "the amended complaint does not survive a renewed motion to dismiss * * * the claims will be dismissed with prejudice." [78] at 1. Plaintiffs amended their complaint, see [82], and Defendants' second round of motions to dismiss [94; 99; 102] are now before the Court.[4]

---

[4] If this order dismissing Plaintiffs' claims looks similar to the last one, it is because Plaintiffs' amended complaint looks similar to the first one, and the sparse changes in the pleadings did not overcome the problems identified in Defendants' briefing and the Court's previous orders [67 and 78].

## II.     Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

## III.   Analysis

### A.   The Eleventh Amendment

Previously, the Court dismissed with prejudice Plaintiff's claims against the Illinois State Police and against officials of the Illinois State Police (Defendants Major Luis Gutierrez, Lieutenant Cynthia Tencza, and Karen Stec) in their official capacities on Eleventh Amendment grounds. See [67] at 6-8. Plaintiffs replead their allegations against the Illinois State Police and the Illinois State Police officials in their official capacities "for the purposes of preserving the issues on appeal." [82] at 1 n.1. Nonetheless, those claims remain dismissed with prejudice.

### B.   Municipal Liability

In order to find a municipality liable under § 1983, Plaintiffs must prove that a municipal policy or custom caused their injury. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986). This is because "[m]unicipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional tort of their agents." *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) (quoting *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006), as amended on denial of reh'g (May 25, 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). The MWRD is a municipality for the purposes of § 1983. *Hewitt v. Metro. Water Reclamation Dist. of Greater Chicago*, 2002 WL 31176252, at *3 (N.D. Ill. Sept. 30, 2002).

Courts have identified three ways in which a municipality can be liable to a plaintiff for a civil rights violation resulting from government policy:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express

municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (internal quotations and citations omitted). Plaintiffs do not allege any policy or practice of the MWRD that led to Plaintiffs' alleged civil rights violation. Accordingly, Plaintiffs' claims against the MWRD and Plaintiffs' claims against officials of the MWRD (Kaye Heidenreich, David St. Pierre, and Denise Korcal) in their official capacities are dismissed with prejudice.

### C. Constitutional Claims

#### 1. Count I: First Amendment (Illinois State Police and MWRD Defendants)

Count I alleges that the State Defendants and the MWRD Defendants violated Plaintiffs' First Amendment right to free speech. The complaint alleges that the State Defendants' decisions to "punish plaintiffs for the content of their private conversation," to record the conversation without Plaintiffs' knowledge and permission, and to "disseminate the recording" without Plaintiffs' knowledge and permission violated their First Amendment rights to free speech. [82] at ¶¶ 142-144. The basis of Plaintiffs' First Amendment claim remains unclear, despite Defendants and the Court pointing out the confusion in the briefing and the previous ruling. For the sake of thoroughness, the Court addresses both First Amendment retaliation and a purported First Amendment right not to be recorded. Neither claim survives the Rule 12(b)(6) analysis.

##### a. First Amendment Retaliation.

To bring a First Amendment retaliation claim in the employment context, Plaintiffs must show that (1) their speech was a matter of public concern, and (2) their speech played at least a substantial part in the employer's decision to take adverse action against them. *Gustafson v. Jones*, 290 F.3d 895, 906 (7th Cir. 2002). "If the plaintiffs can carry their burden on these two elements,

the defendants can only prevail if they prove by a preponderance of the evidence that the government's interest, as an employer, in efficiently providing government services outweighs the employees' First Amendment interests, or if they can prove that they would have disciplined the employees even in the absence of the speech." *Id.* (citing *Klunk v. County of St. Joseph*, 170 F.3d 772, 775 (7th Cir. 1999)). "The stronger the employee's interest in speaking, the more substantial a showing the state must make to justify its restriction of that speech." *Gustafson*, 290 F.3d at 909 (citing *Waters v. Churchill*, 511 U.S. 661, 675 (1994)). In *Pickering v. Board of Education of Township High School District 205*, the Supreme Court set forth the factors to consider in this balancing test. 391 U.S. 563 (1968). Specifically, "*Pickering* contemplates a highly fact-specific inquiry into a number of interrelated factors: (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public." *Gustafson*, 290 F.3d at 909 (citing *Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000)).

The amended complaint fails to allege facts establishing that Plaintiffs' speech was a matter of public concern. Plaintiffs include no allegations about the substance of their conversation, other than to assert that it was "a private conversation," see *e.g.* [82] at ¶ 46, and to claim that the topics "included union negotiations, overtime assignments, staffing, sports, political banter, and other issues," *id.* at ¶ 52. Those perfunctory assertions are not enough to adequately plead that their speech was a matter of public concern. *Milsap v. City of Chicago*, 2018 WL 488270, at *4 (N.D.

Ill. Jan. 19, 2018) (dismissing First Amendment retaliation claim because plaintiff did not allege that his speech was a matter of public concern).

Furthermore, the evidence before the Court suggests that the speech was not a matter of public concern. Plaintiffs characterize their statements as "street vernacular and non-politically correct language." [82] at ¶ 51. But Plaintiffs avoid pleading the actual contents of their conversation or any specific statements that prompted the adverse employment action. Some of the specific statements that prompted Plaintiffs' termination, however, were contained in the Decision of the MWRD Civil Service Board setting out the reasons for Plaintiff Lawlor's termination. See [100-1].[5] The Civil Service Board noted that Plaintiff Lawlor:

- "informed [Varallo] how to drink alcohol" while on duty, [100-1] at 4;
- explained how he slept on duty by saying "I just set the alarm on my phone (inaudible) for every F***ing hour and fifty-eight. So I call in at fifty-nine, go right back to f***in' sleep. After you call in at five o'clock, set that motherf***er for six o'clock, you know so you get up to come and do your f'**ing trunk checks," *id.*;
- referred to Martin Luther King Day by saying "White guys should call it James Earl Ray Day," *id* at 5*;*
- Saying of African American co-workers that "It was the n***er laborers that f***in', that f***ed us," *id.*;
- and, in referring a specific African American co-worker, saying "So that stupid Alabama hill n***er is going to think I'm the one that's trying to bring in relief people who cut down my overtime?" *id.*

Plaintiffs cite no authority—and the Court is not aware of any—establishing that admissions of drinking and sleeping on the job, or using racial slurs towards co-workers, meet the first requirement for stating a First Amendment retaliation claim. Considering the contents of Plaintiff

---

[5] It is proper for the Court to consider this decision, because "[w]hen ruling on a motion to dismiss, the court may consider 'documents * * * attached to the complaint, documents * * * central to the complaint and * * * referred to in it, and information that is properly subject to judicial notice.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)). The Court takes judicial notice of the Civil Service Board decision, as "it is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice." *Opoka v. Immigration & Naturalization Serv.*, 94 F.3d 392, 394-95 (7th Cir. 1996).

Lawlor's statements, it is clear that Plaintiffs fail to allege that their speech was a matter of public concern.

Plaintiffs' response is a nonsensical argument that *Pickering* does not apply to the Illinois State Police because the Illinois State Police was not Plaintiffs' employer. [108] at 5. This does not address whether Plaintiffs' speech was a matter of public concern and in fact suggests that Plaintiffs do not have any First Amendment claims against the State Defendants. The amended complaint fails to state a claim for First Amendment retaliation, and to the extent that Count I attempts to bring such a claim, it is dismissed with prejudice.

b. <u>Purported First Amendment Right Not to Be Recorded</u>

To the extent Plaintiffs seek to bring a First Amendment claim based on a purported First Amendment right not to have their conversation recorded or disseminated or both, Plaintiffs also fail to state a claim. With respect to the MWRD Defendants, Plaintiffs do not allege that they recorded or disseminated Plaintiffs' private conversation. Furthermore, there is no stand-alone First Amendment right not to have a conversation recorded or disseminated or both. Plaintiffs still do not cite to—and the Court is not aware of—any authority establishing such a stand-alone right. To the extent that Count I attempts to bring such a claim, it is dismissed with prejudice.

c. <u>Qualified Immunity</u>

Even if there were a right not to have conversations recorded or disseminated, the State Defendants and the MWRD Defendants would be entitled to qualified immunity on any First Amendment claim based on such a right. "The qualified immunity defense is designed to protect government agents 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)). To determine the availability of qualified immunity in a particular case, the Court engages in a two-step inquiry. "The initial, threshold question is whether the facts, taken in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If a constitutional right is violated, then the Court "must determine if that right was clearly established at the time of the alleged violation." *Id*. (citing *Finsel v. Cruppenink*, 326 F.3d 903, 906 (7th Cir. 2003)). This inquiry is flexible, however, and the Court may decide that conduct did not violate a clearly established constitutional right without deciding if a constitutional right was violated at all. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). Furthermore, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As discussed above, the parties have not cited—and the Court is not aware of—any case recognizing that recording or disseminating a recording of a conversation violates the First Amendment, much less any cases clearly establishing a First Amendment violation under the particular facts of this case. Thus, the State Defendants and the MWRD Defendants are entitled to qualified immunity with respect to this theory. Count I is dismissed with prejudice.

### 2. Count II: Fourth Amendment (State Defendants and MWRD Defendants)

Count II alleges that the State Defendants and the MWRD Defendants violated Plaintiffs' Fourth Amendment rights. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." To state a § 1983 claim for a Fourth Amendment violation, Plaintiffs must plausibly allege that: (1) there was a search or seizure; and (2) the search or seizure was unreasonable. *Angara v. City of Chicago*, 897 F. Supp. 355, 358 (N.D. Ill. 1995). "A Fourth Amendment search occurs when the government

violates a subjective expectation of privacy that society recognizes as unreasonable." *United States v. Scott*, 731 F.3d 659, 663 (7th Cir. 2013) (alteration and quotation marks omitted). A "seizure" for the purposes of the "Fourth Amendment occurs when a person's freedom of movement is restrained either by means of physical force or show of authority," *Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014) (quotation marks omitted), or "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Defendants argue that Plaintiffs fail to allege facts establishing that any defendant engaged in intentional conduct constituting a search or seizure or that Plaintiffs had a reasonable expectation in privacy.

a.     Intentional Conduct Under the Fourth Amendment

Defendants first contend that Plaintiffs' Fourth Amendment claim fails because Plaintiffs do not allege facts sufficient to establish an intentional search or seizure. In order to state a § 1983 claim against Defendants for violating Plaintiffs' Fourth Amendment rights, Plaintiffs must allege intentional conduct on the part of Defendants. *Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2003).

Plaintiffs concede that the State Defendants did not intentionally overhear Plaintiffs' conversation. [108] at 17 (agreeing that "the overhear of that specific conversation was not intentional."). But Plaintiffs attempt to plead intentional behavior in another way. Plaintiffs analogize to products liability cases in which an allegation of failure to remedy a known defective condition is enough to survive a motion to dismiss. [108] at 8-9. Plaintiffs seem to argue that because the Illinois State Police knew in December 2014 that the StarCom radio system was picking up MWRD transmissions, and because they had not fixed the problem by the time of Plaintiffs' conversation, the individual State Defendants acted intentionally when they overheard and recorded Plaintiffs' conversation and that this constituted a search for Fourth Amendment

purposes. See [82] at ¶ 2 (alleging that Illinois State Police was aware of the problem with the radio system and "intentionally failed to maintain, change or repair the equipment and collectively decided to do nothing about these unlawful intercepts."); see also *id.* at ¶ 159 (alleging that Illinois State Police "recklessly disregarded and concealed the known condition in the StarCom system that would autonomously activate like a 'bug,' transmit private non-Illinois State Police conversation, and broadcast such conversations to Illinois State Police non-emergency communication channels.").

However, Plaintiffs do not cite to, and the Court is not aware of, any case establishing that failure to fix a radio transforms inadvertently overhearing transmissions into intentional conduct for Fourth Amendment purposes. Additionally, even if failure to fix a defective radio—which sounds like an allegation of negligence—were intentional, the amended complaint does not allege any facts showing that Major Gutierrez, Lieutenant Tencza, or Ms. Stec were even aware of the alleged defect in the radio system, much less that these individuals participated in any decision not to fix the radio. Thus the amended complaint again fails to allege that the individual State Defendants "caused the deprivation of a federal right," *Luck v. Rovenstine*, 168 F.3d 323, 327 (7th Cir. 1999), and does not state a claim under Section 1983 against the individual State Defendants. Furthermore, there are no allegations that the MWRD Defendants overheard Plaintiffs' conversation or had anything to do with the alleged defect in the StarCom radio system, so the amended complaint similarly fails to allege that they conducted an intentional search and therefore fails to state a claim under Section 1983 against them.

b.      Reasonable Expectation of Privacy Under the Fourth Amendment

Even if any Defendant's actions could be considered intentional, they still do not constitute a search for Fourth Amendment purposes. "[A] Fourth Amendment search occurs when the

government violates a subjective expectation of privacy that society recognizes as reasonable." *Scott*, 731 F.3d at 663, quoting *Kyllo v. United States,* 533 U.S. 27, 33 (2001). "A reasonable expectation of privacy exists when '(1) the complainant exhibits an actual (subjective) expectation of privacy and, (2) the expectation is one that society is prepared to recognize as 'reasonable.'" *United States v. Ruth*, 65 F.3d 599, 604 (7th Cir.1995) (quoting *United States v. Myers*, 46 F.3d 668, 669 (7th Cir. 1995)). A person objecting to the search of a particular area bears the burden of establishing "'a legitimate expectation of privacy' in the area searched." *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980) (quoting *Katz v. United States*, 389 U.S. 347 (1967)); see also *Love v. City of Chicago*, 1998 WL 60804, at *9 (N.D. Ill. Feb. 6, 1998); *Gonzalez-Koeneke v. Rockford Dist. 205*, 2014 WL 11370445, at *2 (N.D. Ill. June 16, 2014) (dismissing Fourth Amendment claim where the plaintiff failed to allege facts showing that she had a reasonable expectation of privacy that society recognizes as reasonable).

Plaintiffs attempt to establish a subjective expectation of privacy in their conversation by alleging that it took place "[b]ehind a closed door in a break room with a lock in a secluded area where any reasonable person would expect privacy at the Stickney Plant and where Plaintiffs worked during the sparsely manned night shift." [82] at ¶ 1. Viewing the allegations in the light most favorable to Plaintiffs, the amended complaint does establish that Plaintiffs had a subjective expectation of privacy in their conversation.

The question before the Court is whether society is prepared to recognize as reasonable an on-duty police officer's expectation of privacy in a room used to sleep and consume alcohol on the job without his supervisors' knowledge. Common sense says the answer is "no," and Plaintiffs cite no authority to the contrary. Although the Court is not aware of any binding precedent directly on point, the weight of authority is against Plaintiffs. The Supreme Court has recognized that

"certain forms of public employment may diminish privacy expectations even with respect to such personal searches." *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 671 (1989) (finding that Customs employees have diminished expectation of privacy with respect to suspicionless urine tests). This principle applies with special force to law enforcement officers. "A trustworthy police force is a precondition of minimum social stability in our imperfect society," *Shields v. Burge*, 874 F.2d 1201, 1204 (7th Cir. 1989) (citing *Biehunik v. Felicetta*, 441 F.2d 228, 230 (2d Cir. 1971), and there is a "substantial public interest in ensuring the appearance and actuality of police integrity." *Biehunik*, 441 F.2d at 230; see also *Driebel v. City of Milwaukee*, 298 F.3d 622, 638 (7th Cir. 2002) ("The public, including fellow law enforcement agents, expects that police officers will not violate the laws they are charged with enforcing." (citing *United States v. Lamb,* 6 F.3d 415, 419 (7th Cir.1993)); *Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 488 (9th Cir. 1986) ("the government has an interest in police integrity which must be considered in evaluating the reasonableness of investigative searches of police officers."). Furthermore, when officers use workspaces for misconduct, courts are reluctant to find that their expectations of privacy in those spaces are reasonable. See, *e.g.*, See *Chicago Fire Fighters Union, Local 2 v. City of Chicago*, 717 F. Supp. 1314, 1319 (N.D. Ill. 1989) (firefighters had no "valid expectation of privacy" in using department-supplied storage lockers to store a cooler of beer); *Hibbert v. Schmitz*, No. 16-cv-3028, [50] at 54-56 (C.D. Ill. Feb. 7, 2019)[6] (Illinois State Police employees who had sex in Illinois State Police conference room lacked reasonable expectation of privacy in locked conference room); *United States v. Bunkers*, 521 F.2d 1217, 1220 (9th Cir. 1975) ("We decline to believe that society is prepared to recognize Bunkers' use of the government supplied employment connected locker to hold in privacy the [stolen] parcels as "reasonable.") Against

---

[6] Also attached as an exhibit to the State Defendant's brief in support of their motion to dismiss. See [95-3].

this backdrop, the Court concludes that society is not willing to condone on-duty police officers' expectation of privacy in a room they are not supposed to be in, which they use for drinking and sleeping during their shifts and collecting their taxpayer funded salaries.

While general principles are sufficient to resolve whether Plaintiffs' expectation of privacy was objectively reasonable, the parties analyze the issue in the context of a public employer workplace. The outcome under this standard is the same. The Supreme Court has recognized that "some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 717-18 (1987). If the area that was searched was given over to an employee's exclusive use, courts are likely to uphold that employee's expectation of privacy as objectively reasonable. *Plock v. Bd. of Educ. of Freeport Sch. Dist. No. 145*, 545 F. Supp. 2d 755, 757 (N.D. Ill. 2007). However, if other employees have access to the space, courts generally find that the employee has no reasonable expectation of privacy. See, *e.g.*, *Hibbert v. Schmitz*, No. 16-cv-3028, [50] at 54-56 (C.D. Ill. Feb. 7, 2019) (Illinois State Police employees who had sex in State Police conference room lacked reasonable expectation of privacy even if conference room could be locked); *Thompson v. Johnson Cty. Cmty. Coll.*, 108 F.3d 1388, 1997 WL 139760, at *2 (10th Cir. 1997) (security personnel had no reasonable expectation of privacy in locker area where other employees could enter); *Plock*, 545 F. Supp. 2d at 757 (public school teachers had no reasonable expectation of privacy in classroom).

The question for the Court is whether other individuals *may* enter the space, not whether they are likely to:

> Here, the locker area was accessible to anyone who entered the room where the lockers were located. That few people other than plaintiffs routinely entered the room does not affect the issue of whether plaintiffs had a reasonable expectation of privacy in the locker area. Similarly, that plaintiffs worked at night when very few people would enter the room does not affect our analysis. We conclude that plaintiffs had no reasonable expectation of privacy in the locker area.

*Thompson*, 108 F.3d 1388, 1997 WL 139760, at *2. While on duty, police officers tend to be in areas that others may enter, and federal courts tend to find that on-duty officers do *not* have a reasonable expectation of privacy under those circumstances. See, *e.g., Demaine v. Samuels*, 29 F. App'x 671, 675 (2d Cir. 2002) (state police detective did not have an objectively reasonable expectation of privacy in his desk or car); *Gray v. Royal*, 181 F. Supp. 3d 1238, 1254 (S.D. Ga. 2016) (sheriff's department employees had no reasonable expectation of privacy in common area of police station); *Harris v. D.C.*, 696 F. Supp. 2d 123, 132 (D.D.C. 2010) (police officer had no reasonable expectation of privacy while on duty at daycare center); *Perraglio v. New Mexico*, 2009 WL 2392027, at *7 (D.N.M. July 8, 2009) (police supervisor had no reasonable expectation of privacy in cubicle separated from the rest of the open, shared workspace only by partitions); *Tancredi v. Malfitano*, 567 F. Supp. 2d 506, 511 (S.D.N.Y. 2008) (police officers had no reasonable expectation of privacy in front desk of a police station, even if visitors rarely approached front desk during nighttime hours); *Gross v. Taylor*, 1997WL 535872, at *6 (E.D. Pa. Aug. 5, 1997) (police officers had no reasonable expectation of privacy or non-interception while on duty in a patrol car).

Plaintiffs allege that, on the night that their conversation was inadvertently intercepted and recorded, they were on duty at the MWRD's water treatment plant in Stickney, Illinois. [82] at ¶ 45. In an attempt to establish that they had a reasonable expectation of privacy, Plaintiffs allege that they were "[b]ehind a closed door in a break room with a lock in a secluded area" while working on the "sparsely manned night shift." *Id.* at ¶ 1. However, Plaintiffs do not allege that this "break room" was given to them by the MWRD for their "exclusive use" or that no one else had access to the room (rather than that it was unlikely anyone else would access the room). *Plock*, 545 F. Supp. 2d at 757. In fact, it was a secret room hidden from MWRD supervisors, and Plaintiff

Lawlor named several other employees who had access to the area. [100-1] at 3-4. The surreptitious nature and use of the room distinguish it from true break rooms and areas sanctioned for private use. *Cf. Gustafson v. Adkins*, 803 F.3d 883, 892 (7th Cir. 2015) (reasonable expectation of privacy in office that female personnel frequently used to change into and out of work uniforms); *Richards v. Cty. of Los Angeles*, 775 F. Supp. 2d 1176, 1183 (C.D. Cal. 2011) (reasonable expectation of privacy in room where on-duty dispatchers were required to take meal and rest breaks). For these reasons, and those discussed above, even if Plaintiffs had subjective expectations of privacy in their beer-drinking and nap-taking hideout, society does not appear ready to recognize them as objectively reasonable. Thus, the interception of Plaintiffs' conversation is not a Fourth Amendment search for this reason as well.

### c. Recording and Transmitting the Conversation

Furthermore, a long line of cases holds that the recording or transmitting of a conversation legally overheard does not violate the Fourth Amendment. See, *e.g., United States. v. White*, 401 U.S. 745, 751 (1971) ("If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks."); *United States v. Thompson*, 811 F.3d 944, 949 (7th Cir. 2016) ("[W]hen the informant discovers information from where he is lawfully entitled to be, the use of a recording device to accurately capture the events does not vitiate the consent or otherwise constitute an unlawful search."); *United States v. Miller*, 720 F.2d 227, 228 (1st Cir. 1983) ("Nor, equally, when one is lawfully listening to a conversation, is there a violation merely because, unknown to the other party, he records it." (citing *Lopez v. United States*, 373 U.S. 427,

439 (1963)); *cf. Matter of John Doe Trader No. One*, 722 F. Supp. 419, 422 (N.D. Ill. 1989) ("Where a tape recorder is used to record a conversation which the government agent is unable to overhear with his naked ear, a different situation is presented. There, the tape recorder can be the means of 'acquiring' the conversation, not simply the means of preserving it." (quoting *Katz v. United States*, 389 U.S. 347 (1967)). Plaintiffs offer no authority to the contrary. Given that Plaintiffs concede that the State Defendants lawfully listened to their conversation, Plaintiffs fail to allege that the State Defendants violated the Fourth Amendment by recording their conversation.

Finally, becasue it did not violate the Fourth Amendment to record the conversation, it also did not violate the Fourth Amendment to transcribe or disseminate the recording. *Jabara v. Webster*, 691 F.2d 272, 279 (6th Cir. 1982) ("We do not believe that an expectation that information lawfully in the possession of a government agency will not be disseminated, without a warrant, to another government agency is an expectation that society is prepared to recognize as reasonable."); *United States v. Joseph*, 829 F.2d 724, 728 (9th Cir. 1987) ("Federal examination of evidence in the state's possession does not constitute an independent search requiring the execution of a search warrant."). Nor did it violate the Fourth Amendment for the MWRD Defendants to use a tape that it lawfully acquired.

<h4 style="text-align:center">d.     Qualified Immunity</h4>

Plaintiffs' theory is still that the State and MWRD Defendants violated Plaintiffs' Fourth Amendment rights through the Illinois State Police's failure to fix a malfunctioning radio in the month after learning of the malfunction. Plaintiffs did not cite any cases supporting the conclusion that such a failure amounts to a violation of their constitutional rights. Even assuming such a right exists, the Court is not aware of any cases clearly establishing such a right. Thus, to the extent that Plaintiffs sought to bring a Fourth Amendment claim based on Defendants' failure to fix a

malfunctioning radio, Defendants would be entitled to qualified immunity. *Pearson*, 555 U.S. at 243 (holding that officers were entitled to qualified immunity where they "did not violate clearly established law").

In sum, because Plaintiffs cannot establish that the State Defendants or the MWRD Defendants violated their Fourth Amendment rights by unintentionally overhearing a conversation, recording it, and disseminating or using the recording, Plaintiffs' Fourth Amendment claim is dismissed with prejudice.

### 3. *Count III: Fourteenth Amendment Equal Protection (MWRD Defendants)*

Count III alleges that the MWRD Defendants violated Plaintiffs' constitutional right to equal protection. Plaintiffs claim they were "treated differently than similarly situated individuals" when the Illinois State Police copied to a CD their "private conversation" that was broadcast over an Illinois State Police radio channel; the Illinois State Police gave the CD to the MWRD; the MWRD gave the CD to the press and relied on the "private conversation" to terminate the employment of Plaintiffs. [82] at ¶¶ 175-178. The amended complaint again compares the MWRD Defendants' use of the recording of Plaintiffs' conversation in disciplining Plaintiffs to an alleged 2013 incident in which MWRD, in a hostile work environment matter, declined to use a female police officer's recording of a co-worker. [82] at ¶¶106, 107, 180, 193. These facts are substantively the same as those pled in Plaintiffs' original complaint, on which the Court dismissed Plaintiffs' equal protection claims, because claims brought under "a class of-one" theory of equal protection has no place in the public employment context. [78] at 14 (citing *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008).

The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination. The typical equal protection case involves discrimination by race,

national origin, or sex; however, the Equal Protection Clause also prohibits the singling out of a person for different treatment for no rational reason. A claim that the government singled a plaintiff out for different treatment for no rational reason is referred to as a class-of-one claim. *Jarmuth v. City of Chicago*, 43 F. Supp. 3d 889, 893 (N.D. Ill. 2014). The classic class-of-one claim is illustrated when a public official, "with no conceivable basis for his action other than spite or some other improper motive * * * comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005); see also *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013).

To state an equal protection claim based on a class-of-one theory, a plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. at 601-02 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The Seventh Circuit has held that "even at the pleading stage a class-of-one plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis." *Jackson v. Vill. of W. Springs*, 612 F. App'x 842, 846-47 (7th Cir. 2015) (quotations omitted). As long as the Court can "come up with a rational basis for the challenged action, that will be the end of the matter—animus or no." *Id*. A "presumption of rationality" attaches to government action challenged in class-of-one claims. *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 548 (7th Cir. 2008) (affirming dismissal of class-of-one claim based on plaintiff's failure "to overcome the presumption of rationality that attaches to government actions in a class of one equal protection case"). In addition, Plaintiffs must demonstrate as an essential element of their equal protection claim that they were treated differently than someone who is "*prima facie* identical" in all relevant respects. *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

Defendants have moved to dismiss Plaintiffs' equal protection claim, arguing that Plaintiffs fail sufficiently to allege (1) that similarly situated individuals were treated differently, or (2) that Defendants acted with the requisite animus—without any rational basis. Plaintiffs allege that the MWRD treated them differently than similarly situated individuals when it gave a copy of the recorded conversation to the press and relied on the recording to terminate Plaintiffs' employment. [82] at 178-179.[7] However, beyond these conclusory assertions, Plaintiffs do not allege facts establishing that any similarly situated person was treated differently by the MWRD Defendants. Most of this argument is a reference to a 2013 decision by Defendant Korcal not to use a recording made by a female officer as evidence in an investigation of the co-worker's conduct, because the recording was made without the co-worker's knowledge or permission. [82] at ¶ 180. But the amended complaint does not assert that the female officer, or the officer on the tape recording, admitted to misconduct or used racial slurs toward a fellow officer, or was in any other way similarly situated to Plaintiffs, except that the investigation involved a recorded conversation. These allegations are insufficient to establish that Plaintiffs were treated differently than someone who is "*prima facie* identical" in all relevant respects. *Purze*, 286 F.3d at 455.

Furthermore, the Court already noted that it "can conceive of many rational bases for excluding a recording of an employee made by a fellow employee, but not excluding a recording made by the Illinois State Police. For example, an employer might not want to appear to endorse an employee surreptitiously recording a co-worker. Such a concern would not be at issue with a recording received from the Illinois State Police." [67] at 27. The amended complaint pleads no additional facts that undermine this rational basis, or any other rational basis, for the MWRD's

---

[7] Plaintiffs allege in similarly conclusory fashion that the Illinois State Police treated them differently from similarly situated individuals. [82] at ¶¶ 175-177. But the Illinois State Police was not Plaintiffs' employer, and the amended complaint does not even purport to make an equal protection claim against the Illinois State Police.

acceptance of the recording from the Illinois State Police. Plaintiffs therefore have again failed to allege facts establishing the necessary elements of their class-of-one claim against the MWRD Defendants

Finally, the Supreme Court has explicitly held that "a 'class-of-one' theory of equal protection has no place in the public employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008). In so holding, the Supreme Court considered the "traditional view of the core concern of the Equal Protection clause as a shield against arbitrary classifications." *Id*. at 598. In acting as an employer, the government's actions "by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments." *Id*. at 603. Thus, "[t]o treat employees differently is not to classify them in a way that raises equal protection concerns," but rather, "it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship." *Id*. at 605. To allow a class-of-one challenge in these circumstances "would undermine the very discretion that such state officials are entrusted to exercise." *Id*. at 603. Accordingly, Count III of the amended complaint is dismissed with prejudice.

Finally, the individual MWRD Defendants are entitled to qualified immunity on Plaintiff's equal protection claim. Plaintiffs have not cited, and the Court is not aware of, any clearly established law holding that a government employer's use of a recording provided by law enforcement to discipline employee misconduct violates the employee's equal protection rights. Thus the individual MWRD Defendants are entitled to qualified immunity on Count III.

**D.      Electronic Communication Privacy Act (All Defendants)**

Count IV alleges that all Defendants violated the Electronic Communication Privacy Act, 18 U.S.C. § 2511 ("Wiretap Act") by intercepting, recording, and disclosing the contents of the

Plaintiffs' conversation to another party. [82] ¶¶ 199-200. "The Wiretap Act prohibits intentionally intercepting an oral conversation, as well as intentionally disclosing or using the contents of such a conversation while having reason to know that it was unlawfully intercepted." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (internal citations omitted). The Wiretap Act defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

1. *Unintentional Interception*

Defendants argue that there was no intentional interception of Plaintiffs' conversation. "The Wiretap Act prohibits intentionally intercepting an oral conversation, as well as intentionally disclosing or using the contents of such a conversation while having reason to know that it was unlawfully intercepted." *Iroquois Mem'l Hosp.*, 622 F.3d at 751 (internal citations omitted). Section 2511 proscribes only intentional interceptions and thereby excludes inadvertent interceptions. See *Sanders v. Robert Bosch Corp.* 38 F.3d 736, 742-743 (4th Cir. 1994) citing *Thompson v. Dulaney*, 970 F.2d 744, 748 (10th Cir. 1992).

Plaintiffs concede, as they have before, that "the overhear of that specific conversation was not intentional," *i.e.*, that the Illinois State Police did not intentionally intercept Plaintiffs' conversation. [108] at 17. That should be the end of the analysis—no intentional interception, no Wiretap Act violation, see *Sanders*, 38 F.3d at 742-43—but Plaintiffs suggest again that the Illinois State Police and Motorola intercepted the conversation intentionally because they knew of the alleged StarCom malfunction that led to the transmission of Plaintiffs' conversation. [108] at 17, 20. Plaintiffs cite no authority suggesting that awareness of the radio malfunction turns accidentally overhearing Plaintiffs' conversation into an intentional act for the purposes of the

Wiretap Act. Furthermore, Plaintiffs do not allege that Individual State Defendants—Gutierrez, Tencza, and Stec—were aware of any malfunctions. Thus, even if *someone* at the State Police was aware of the malfunction, this does not make the Individual State Defendants' interception intentional.

Plaintiffs' argument similarly fails for Motorola. There are no allegations that any Motorola personnel overheard Plaintiffs' conversation as it was broadcast (and it appears that the only reason Motorola has been dragged into this suit is that it happens to have made the equipment that broadcast Plaintiffs' conversation). While the amended complaint asserts that "Defendants Motorola and Illinois State Police knew that their StarCom system and equipment was defective and recklessly disregarded the fact that listening and recording of the private conversations of MWRD employees would ensure violating their rights without their knowledge or permission," this is not sufficient to allege that Motorola acted intentionally under the Wiretap Act. [82] at ¶206.

The Court warned Plaintiffs about continuing to pursue this claim against Motorola, writing in its opinion on Plaintiffs' motion for reconsideration, "If Plaintiffs believe that they can bring a Wiretap Act claim against Motorola, Plaintiffs may allege facts supporting such a claim in any amended complaint. Again, *counsel should only do so if they believe they can bring such a claim with the bounds of Rule 11*." [78] at 15 fn. 6 (emphasis added). The amended complaint does not allege any facts suggesting that that Motorola ever intercepted, recorded, transcribed, disseminated, or otherwise used the inadvertently overheard conversation.[8]

Turning to the MWRD, there are simply no allegations that it or any of its personnel overheard Plaintiffs' conversation at all. With such allegations absent for the MWRD defendants

---

[8] Unsurprisingly, Motorola suggests that Plaintiffs violated Federal Rule of Civil Procedure 11(b) and seems to be considering a motion for sanctions under Rule 11(c)(2). See [103] at 14 fn. 3.

and inadequate for the State Defendants and MWRD, the amended complaint does not meet the threshold pleading requirement that Defendants acted intentionally to bring a claim under the Wiretap Act.

### 2. Law Enforcement Exception (State Defendants)

Even if the interception had been intentional, Defendants argue that the Wiretap Act's law enforcement exception would apply. The Wiretap Act creates a law enforcement exception by defining "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than* any telephone or telegraph instrument, equipment or facility, or any component thereof * * * being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii) (emphasis added). The Seventh Circuit has indicated, albeit in dicta, that the incidental recording of guards' personal conversations on a prison's main telephone line would be covered by the law enforcement exception if the recording device was "being used" within the ordinary course of a prison warden's duties to record calls from the public into a prison. *Amati v. City of Woodstock,* 176 F.3d 952, 955–56 (7th Cir. 1999); see also *Kelsey v. Sheehan*, 20 F. App'x 538, 539 (7th Cir. 2001) ("Federal law permits a police department to record calls on official lines."); *Jandak v. Vill. of Brookfield*, 520 F. Supp. 815, 822 (N.D. Ill. 1981) ("There is little doubt that Congress did not intend the statute to apply to routine recording of emergency and investigative calls as an integral component of a police station telephone system."). The State Police listen to and record the Chicago North radio channel as a routine part of their operations. See [82] at ¶ 82-83; [95-4] (Illinois State Police Directive ADM-011, Section I.A) ("The Illinois State Police (ISP) will [u]se logging recorders and console-based instant retrieval at ISP facilities to record radio

27

channels and emergency telephone lines.").[9]  Because the Illinois State Police was recording an police radio channel normally used for State Police and emergency communications, the amended complaint fails to allege that the State Defendants' "interception" and recording of the Plaintiffs' conversation violates the Wiretap Act.

### 3. No Reasonable Expectation of Privacy

Plaintiffs' Wiretap Act claim also fails because, as discussed in the Fourth Amendment analysis, Plaintiffs have not alleged facts sufficient to establish that they had a reasonable expectation of privacy in their communications.  The Wiretap Act defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."  18 U.S.C.A. § 2510 (2).  Congress drafted the definition of "oral communication" to reflect the Supreme Court's standards for determining when a reasonable expectation of privacy exists.  *United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993); *United States v. Clark*, 22 F.3d 799, 801 (8th Cir. 1994).  As discussed above, Plaintiffs have not alleged facts sufficient to conclude that they had a reasonable expectation of privacy.  Thus, Plaintiffs' Wiretap Act claim fails for this reason as well.

### 4.      Recording and Disseminating the Conversation

Furthermore, because the Illinois State Police did not violate the Wiretap Act by overhearing and recording Plaintiffs' conversation, their subsequent copying and distribution of tapes of the conversation did not violate the Wiretap Act.  Liability under 18 U.S.C. § 2511(1)(c) and (d) is limited to cases when the defendant knows or has reason to know that the communication

---

[9] As noted above, the Court may take judicial notice of this document because its contents are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned," *Driebel v. City of Milwaukee*, 298 F.3d 622, 622 (7th Cir. 2002), *quoting* Fed. R. Evid. 201(b), and because it is incorporated in Plaintiffs' complaint (see [82] at ¶¶ 82-83).  *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

was obtained unlawfully. *Iroquois Mem'l Hosp.*, 622 F.3 dat 753 (granting summary judgment for the defendant where there was insufficient evidence "to base a reasonable inference that he knew the recording was illegally obtained"); see also *Forsyth v. Barr*, 19 F.3d 1527, 1538 (5th Cir. 1994) ("Liability for disclosure or use requires proof that it was intentional, that the information was obtained from an intercepted communication, and that the defendant knew or should have known that the interception was illegal."); *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (copying a recording does not itself violate the Wiretap Act). Here, because Plaintiffs have not alleged facts establishing that the initial interception was unlawful, Defendants cannot be liable for any subsequent use or disclosure of the conversation. Accordingly, Count IV of the amended complaint is dismissed with prejudice.

### 5. *Qualified Immunity*

Even if the recording of Plaintiffs' conversation violated their statutory rights under the Wiretap Act, it was not a violation of any clearly established statutory right. In ascertaining whether a right is clearly established, the Court considers controlling Supreme Court and Seventh Circuit precedent. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009). There are no controlling cases establishing that the police violate the Wiretap Act by continuing to record a radio channel dedicated by law to police use. Indeed, other than cases discussing the general purpose of the Wiretap Act, the only cases Plaintiffs cite in support of their argument that the State Defendants violated the Wiretap Act by recording their conversation are from the Fourth Circuit. None of the cases cited by Plaintiff address whether the police violate the Wiretap Act by continuing to record a radio channel dedicated to police use by law when the conversation inadvertently is intercepted. Thus, even if the Illinois State Police violated the Wiretap Act by recording Plaintiffs' conversation, the individual State Defendants would be entitled to qualified immunity.

Furthermore, if State Defendants would be entitled to qualified immunity on these grounds, the MWRD Defendants, who did not participate in the interception and merely accepted a CD of the recording from the State Police, would certainly be protected by qualified immunity.

### E.    State-Law Claims

All Defendants move to dismiss the state-law claims.  In the event that the Court dismisses all of the federal claims, the State and MWRD Defendants urge the Court to decline to exercise supplemental jurisdiction over the state-law claims.  Motorola, in contrast, asks the Court to exercise supplemental jurisdiction and dismiss the state-law claims on the merits.  Motorola argues in part that judicial economy, fairness, and convenience support an exercise of supplemental jurisdiction, because

> "Plaintiffs' original complaint was filed over two years ago on January 9, 2017. Their claims against Motorola are unsupported, attenuated, and a transparent attempt to throw everything at the wall and see what sticks.  After two years of litigation, the time has come for a dispositive ruling on whether Plaintiffs can sustain a claim against Motorola or not."

[103] at 16.  The Court is not unsympathetic to Motorola's position.[10]  However, "[t]he usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.'"  *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)); see also *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When

---

[10] The Court also notes that this is the third time Plaintiffs' "illegal bug" argument for their lack of accountability for their conversation has failed.  It did not convince the MWRD Civil Service Board, [100-1] at 3 ("Lawlor filed two motions in limine alleging that his recorded conversation with Varallo be barred claiming it violated the Illinois Eavesdropping Act, the Federal Wiretapping Act, and the Fourth Amendment.  After full briefing and oral arguments by both parties, the [Civil Service Board] denied both of Lawlor's motions in limine to exclude the recording finding, among other things, that: there was no eavesdropping device used; there was no eavesdropper involved; the conversation was not private; the recording was not surreptitious; and the interception was not intentional."); this Court dismissed the original complaint, which relied on that theory, [67]; and when Plaintiffs stuck with that theory in the amended complaint, despite the chance to replead all facts and legal theories, the Court today dismisses their claims again.

all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, which the plaintiff can then prosecute in state court.") (citations omitted); *Curry v. Advocate Bethany Hosp.*, 204 F. App'x 553, 558 (7th Cir. 2006) ("The district court properly dismissed the pendant state-law tort claims without prejudice because the federal claims were dismissed at screening.") (citing 28 U.S.C. § 1367(c); *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 564-65 (7th Cir. 2005)).  Because the Court is dismissing Plaintiffs' federal claims, the Court also dismisses Plaintiffs' state-law claims against all Defendants without prejudice. [11]

## IV.  Conclusion

For the reasons explained above, Defendants' motions to dismiss [94, 99, 102] are granted with respect to the federal claims (Counts I, II, III, and IV), which are dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over the state-law claims, dismissing them without prejudice.  Civil case terminated.

Dated: March 11, 2020

_____
Robert M. Dow, Jr.
United States District Judge

---

[11] Exceptions to this general rule exist: (1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.  *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (citation and internal quotation marks omitted).  Here, none of the exceptions applies.  First, Illinois has adopted a "rule of tolling," which provides that if an action "is dismissed by a United States District Court for lack of jurisdiction, * * * then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff * * * may commence a new action [in state court] within one year or within the remaining period of limitation, whichever is greater, after * * * the action is dismissed by a United States District Court for lack of jurisdiction." 735 ILCS 5/13–217; see also *Davis*, 534 F.3d at 654; *White v. City of Chicago*, 149 F.Supp.3d 974, 983–84 (N.D. Ill. 2016).  Second, this Court has not yet committed "substantial judicial resources" to considering the merits of Plaintiff's state law claims.  See *Davis*, 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case").  Third, it is not clearly apparent how the state law claims would be decided.  In these circumstances, the usual rule applies and dictates dismissal without prejudice of Plaintiff's state law claims in Count III through Count X.